Scott **BALDWIN, J.L. Smith, Kevin T. Brown, individually and on behalf of a class of individuals similarly situated**

v.

**PIRELLI ARMSTRONG TIRE CORPORATION, United Rubber, Cork, Linoleum and Plastic Workers of America and URW Local Union 670.**

No. 3:95–1035.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 29, 1996.

Robert Ladd DeLaney, Jeffrey Alan Green, Alvin L. Harris, Nashville, TN, for plaintiffs.

Richard Lee Colbert, Nashville, TN, Carolyn R. Armstrong, Akron, OH, Charles Hampton White, Phillip A. Purcell, George Edward Barrett, Charles R. Armstrong, Nashville, TN, for defendants.

## MEMORANDUM

CAMPBELL, District Judge.

Pending before the Court is Plaintiffs' Motion to Remand (Docket No. 7). The Motion is DENIED for the reasons stated herein.

Plaintiffs filed their Complaint (Docket No. 1) in the Circuit Court for Nashville, Davidson County, Tennessee. Defendants filed a Notice of Removal (Docket No. 1) and removed the case to this Court pursuant to 28 U.S.C. § 1441[1]. Defendants alleged 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity of citizenship) as the basis for this Court's jurisdiction.

Plaintiffs then filed a Motion to Remand (Docket No. 7) the case back to state court on the ground that this Court lacks subject matter jurisdiction over this action. Defendants subsequently abandoned 28 U.S.C. § 1332 as a basis for jurisdiction.

The Complaint alleges that Plaintiffs were hired by Pirelli Armstrong Tire Corporation ("Pirelli") as "permanent replacement workers" for striking union employees and that Plaintiffs were terminated when the strike ended and the union employees went back to work. The Complaint contains four counts: Count One is for "Retaliatory Discharge" against Pirelli; Count Two is for "Breach of Employment Contract" against Pirelli; Count Three is for "Interference with Contract" against the United Rubber, Cork, Linoleum and Plastic Workers of America and the URW Local 670 (collectively "Unions"); and Count Four is for "Civil Conspiracy" against all Defendants.

The Defendants have each filed Answers (Docket Nos. 3, 5, and 6) raising the defense of preemption, among other defenses.

The issue before the Court is whether the Court has federal question subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, under either of two theories of law: (1) the "Well–Pleaded Complaint Rule" or (2) the

---

1. 28 U.S.C. Sections 1441(a) and (b) provide:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

**1050**

"Complete Preemption Doctrine" exception to the Well–Pleaded Complaint Rule.

28 U.S.C. § 1331 provides:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

■ The presence or absence of federal question jurisdiction necessary to support removal is governed by the Well–Pleaded Complaint Rule, under which "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392–93, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987). Generally, a case may not be removed "on the basis of a federal defense, including the defense of preemption." *Id.* The Well–Pleaded Complaint Rule makes the plaintiff the "master of the claim." *Id.* A plaintiff may "avoid federal jurisdiction by exclusive reliance on state law." *Id.*

■ One exception to the Well–Pleaded Complaint Rule is the Complete Preemption Doctrine. "Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.*

Plaintiffs assert that this case should be remanded under the Well–Pleaded Complaint Rule because all four counts of their Complaint arise under Tennessee, rather than federal, law (Docket No. 8). Plaintiffs also argue that the Complete Preemption Doctrine does not apply because the state law claims are not completely preempted by federal labor law (Docket No. 12).

Defendants oppose remand on the following grounds: (1) the Complaint alleges violations of federal law; and (2) all state law claims are completely preempted by federal labor law because the claims are inextricably intertwined with, and substantially dependent on, a collective bargaining agreement or strike settlement agreement (Docket Nos. 9 and 10).

A detailed examination of the Complaint is necessary since the language of the Complaint controls whether the case must be remanded. The Complaint alleges:

Pirelli manufactured tires in a plant in Madison, Tennessee (¶ 5). Substantially all of the hourly workers at Pirelli were Union members (¶ 6). In July, 1994, the Pirelli Union workers went on strike (¶ 7). Pirelli hired non-union workers to replace the striking Union members (¶ 9). The parties "bargained to an impasse," and Pirelli then proposed a new collective bargaining agreement to the Unions with the understanding that the Union members would be terminated if the agreement was not accepted (¶¶ 10–11). The Unions did not accept the proposed agreement (¶ 12). Pirelli terminated the employment of all striking Union members (¶ 13).

After termination of the Union workers, Pirelli advised new and existing replacement workers that they were hired into "permanent" positions (¶¶ 15–16). A six-month probation period applied (¶ 17).

In March, 1995, Pirelli and the Unions reached a new collective bargaining agreement and the strike ended (¶¶ 18–19). Many Union members were rehired by Pirelli (¶ 20).

After the strike ended, Pirelli began to lay off the permanent replacement workers on the pretext of a reduction in force and other purported reasons (¶¶ 24–26). Pirelli and the Unions agreed to extend the probation period of all permanent replacement workers (¶¶ 27–28).

Pirelli then terminated all permanent replacement workers hired during the strike before the extended probation period expired (¶ 29). Pirelli thereupon rehired many Union members who had been on strike (¶ 30).

In negotiating the new collective bargaining agreement, Pirelli and the Unions "agreed that the permanent replacement workers would be terminated following the end of the strike" and that the Union members "would be rehired for those jobs" (¶¶ 35–36). Plaintiffs seek to make this a class action (¶¶ 38–45).

As "Background Facts," the Complaint also alleges: "Under federal law, the perma-

nent replacement workers had a right to work for Pirelli" without being Union members (¶ 21). "It would be an unfair labor practice, in violation of federal labor law, for Pirelli to terminate the employment of the permanent replacement workers solely because they were not" Union members (¶ 22). "It would be an unfair labor practice, in violation of federal labor law," for the Unions "to seek to cause the termination of the permanent replacement workers in order to make positions" for Union members (¶ 23).

Count One of the Complaint is against Pirelli for "Retaliatory Discharge." It alleges that Tennessee is a "right to work" state and that Pirelli violated Tennessee public policy, as evidenced by Tennessee Code Annotated Section 50–1–201, by terminating Plaintiffs for not being Union members (¶¶ 47–49). Count One also alleges that "Pirelli knew that it was a violation of both Tennessee and federal law to terminate employees based on the fact that the employees were not union members," and Plaintiffs seek punitive damages on that basis (¶ 52).

Count Two of the Complaint is against Pirelli for "Breach of Employment Contract." It alleges that Pirelli's "termination of the permanent replacement workers ... constituted a breach of their employment agreements, because Pirelli both expressly and impliedly promised the replacement workers that they were employed in 'permanent' positions and would not be terminated solely to make room to re-hire the striking" Union members or "as an accommodation" to "end the strike" (¶ 54).

Count Three is against the Unions for "Interference with Contract." It alleges that the Unions induced and caused Pirelli to terminate the permanent replacement workers in violation of their employment contracts (¶¶ 61, 65–67). Count Three also alleges that the Unions were "aware that under Tennessee and federal law, it was unlawful for Pirelli to terminate the permanent replacement workers based solely on the fact such employees were not" Union members (¶ 62). "[I]t was a violation of both Tennessee and federal law to terminate employees based on the fact the employees were not" Union members and, thus, Plaintiffs seek punitive damages (¶ 70).

Count Four is against all the Defendants for "Civil Conspiracy." It alleges that Pirelli and the Unions "combined for the purpose of causing the termination of the employment" of the Plaintiffs "in violation of Tennessee and federal law" (¶¶ 71, 72, 73). The Defendants allegedly entered "into an agreement that the permanent replacement workers would be terminated following the strike" for pretextual reasons (¶ 73(a), (b), and (c)). Defendants "knew that it was a violation of both Tennessee and federal law to terminate employees based on the fact the employees were not Union members" and Plaintiffs seek punitive damages on that ground.

▮ If any one of the four Counts of the Complaint comes within the original jurisdiction of this Court, removal was proper as to the whole case. 28 U.S.C. § 1441(c) provides:

Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

The Court, however, may exercise its discretion to remand state law claims and retain only the federal claims.

The Plaintiffs contend that this case is controlled by the principles of law annunciated by *Belknap, Inc. v. Hale*, 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983). The Supreme Court in *Belknap* held that the National Labor Relations Act ("NLRA") did not preempt a misrepresentation and breach of contract action against an employer in state court by strike replacements who were displaced by reinstated strikers after having been offered and accepted jobs on a permanent basis and assured that they would not be fired to accommodate returning strikers.

The Defendants claim that the case is controlled by *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). In *Caterpillar*, the Supreme Court

held that a claim asserting breach of individual employment contracts was not completely preempted by § 301 of the Labor Management Relations Act ("LMRA").

The *Belknap* case concerned the issue of NLRA preemption of state law claims. The Supreme Court, in *Belknap*, summarized the "two doctrines for determining whether state causes of action are preempted" by the NLRA:

> Under the first, set out in *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), state regulation and causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the Act.... The state regulation or cause of action may, however, be sustained if the behavior to be regulated is behavior that is only peripheral concern to the federal law or touches interests deeply rooted in local feel and responsibility.... In such cases, the state's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the [NLR] Board's ability to adjudicate controversies committed to it by the Act ... and the risk that the state will sanction conduct that the Act protects.
>
> The second preemption doctrine, set out in *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976), proscribes state regulation and state-law causes of action concerning conduct that Congress intended to be unregulated ... conduct that was to remain a part of the self-help remedies left to the combatants in labor disputes.

*Belknap*, 463 U.S. at 498–99, 103 S.Ct. at 3177.

What was not at issue in *Belknap* is significant. Preemption by § 301 of the LMRA was not at issue. Also, removal of state claims to federal court was not in question.

The Supreme Court, in *Caterpillar*, succinctly stated the test for § 301 LMRA preemption:

Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims "substantially dependent on analysis of a collective bargaining agreement."

*Caterpillar*, 482 U.S. at 394, 107 S.Ct. at 2431.

The *Caterpillar* court also held that NLRA preemption is not sufficient to remove state law claims to federal court under the Complete Preemption Doctrine:

> The fact that a defendant might ultimately prove that a plaintiff's claims are preempted under the NLRA does not establish that they are removable to federal court ... state law claims might be preempted by the NLRA, but they would not be transformed into claims arising under federal law.

*Caterpillar*, 482 U.S. at 398 and 398 n. 12, 107 S.Ct. at 2432 and 2432 n. 12.

■ This Court finds that NLRA preemption is not enough to remove state claims to federal court under the Complete Preemption Doctrine. *Id.*[2] Accordingly, this Court finds that *Belknap* has no application to the Motion to Remand. *Belknap* is an NLRA case. *Belknap* did not involve § 301 LMRA preemption. Removal was not an issue in *Belknap*.

The issues in this case, thus, are whether the claims on the face of the Complaint: (1) present a federal question under the Well Pleaded Complaint Rule; or are (2) preempted by § 301 of the LMRA under the Complete Preemption Doctrine.

The Breach of Employment Contract claim in Count Two of the Complaint clearly does not give this Court jurisdiction. Count Two makes no mention of federal law and, thus, the Well–Pleaded Complaint Rule does not support jurisdiction.

■ Pirelli argues that Count Two incorporates by reference certain "Background Facts" of the Complaint which allege violations of federal law (*see, e.g.,* ¶¶ 21–23). The Court finds that these "Background Facts" do not create an action "arising under" the laws of the United States as required by 28

---

**2.** *See also DeCoe v. General Motors Corp.*, 32 F.3d 212, 219 (6th Cir.1994).

U.S.C. § 1331. The "Background Facts" are not a "necessary element" of the Breach of Employment Contract claim. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983); 11 S. Williston, *A Treatise on the Law of Contracts* § 1290 (3d ed.1968).

▋ The Breach of Employment Contract claim, moreover, is not completely preempted for purposes of removal by § 301 of the LMRA and, therefore, the Complete Preemption Doctrine does not apply to Count Two.

The Supreme Court in *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), held that a complaint asserting breach of individual employment contracts was not completely preempted by § 301 of the LMRA and, therefore, was not removable to federal court.

Application of *Caterpillar* to the facts of this case requires this Court to hold that the Breach of Employment Contract claim of Count Two is not completely preempted by § 301 of the LMRA for purposes of removal and, therefore, is not removable to this Court. The Court makes no finding whether NLRA preemption is a valid or invalid defense to the Breach of Employment Contract claim on the merits.

▋ The Retaliatory Discharge (Count One), Interference with Contract (Count Three) and Civil Conspiracy (Count Four) claims present additional issues. Each of these remaining Counts is based on Tennessee law, but makes a claim for punitive damages on the grounds of "a violation of both Tennessee and federal law to terminate employees based on the fact the employees were not union members" (¶¶ 52, 62, 70 and 78). Damages, of course, are generally a necessary element of a cause of action. *See Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822 (Tenn.1994) (retaliatory discharge); Tenn.Code Ann. § 47–50–109 and *TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169 (Tenn. Ct.App.1987) (interference with contract); *Braswell v. Carothers*, 863 S.W.2d 722 (Tenn. Ct.App.1993) (civil conspiracy).

▋ The issue, thus, becomes whether an alleged violation of federal law, as one of two bases for a claim of punitive damages, is enough to confer federal question jurisdiction under the Well–Pleaded Complaint Rule. Based on the facts in this case, the answer is no.

▋ "Only state-court actions that originally could have been filed in federal court may be removed to federal court." *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429. "As an initial proposition," if "the 'law that creates the cause of action' is state law," then "original federal jurisdiction is unavailable unless it appears that some substantial disputed question of federal law is a *necessary element* of one of the well-pleaded state claims." *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. at 2848 (emphasis added).

A claim for enhanced or punitive damages is not a "*necessary* element" of any of the state law claims. The state claims could have been made with a demand for compensatory damages alone. (¶¶ 51, 68, and 75). The Court, therefore, finds that the claims for punitive damages, based in part on the alleged violations of federal law, are neither "necessary" to, nor an "element" of, such state law claims. Accordingly, under the Well–Pleaded Complaint Rule, this Court does not have federal question jurisdiction based on the punitive damage claims for Retaliatory Discharge (Count One), Interference with Contract (Count Two), or Civil Conspiracy (Count Four) claims.

The Civil Conspiracy (Count Four) claim presents the final issue under the Well–Pleaded Complaint Rule. Paragraph 72 of the Complaint alleges that Pirelli and the Unions "combined for the purpose of causing the termination of the employment" of the Plaintiffs "in violation of Tennessee and federal law." Defendants argue that Count Four presents a federal question because it alleges a civil conspiracy among the Defendants to violate federal law as well as Tennessee law.

▋ Under Tennessee law, a "civil conspiracy" is a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose

not in itself unlawful by unlawful means. *Braswell v. Carothers,* 863 S.W.2d at 727. Thus, an alleged violation of federal law is not a *necessary* element of a civil conspiracy. It is sufficient that Plaintiffs have alleged a violation of Tennessee law, specifically, Tennessee Code Annotated Section 50–1–201. A violation of federal law is not required to prove the Civil Conspiracy claim.

■ The Court holds, for the reasons described above, that the Well–Pleaded Complaint Rule does not support federal question jurisdiction in this case.

The remaining issue is whether the Complete Preemption Doctrine applies to Count One (Retaliatory Discharge), Count Three (Interference with Contract), or Count Four (Civil Conspiracy), and thereby, gives the Court subject matter jurisdiction.

Defendants contend that § 301 of the LMRA, codified as 29 U.S.C. § 185, completely preempts Plaintiffs' Retaliatory Discharge, Interference with Contract and Civil Conspiracy Counts because: (1) the claims are inextricably intertwined with the collective bargaining agreement between Pirelli and the Unions and are substantially dependent upon an analysis of the collective bargaining agreement; and (2) the Court must analyze the strike settlement agreement between Pirelli and the Unions to determine the claims.

29 U.S.C. § 185(a), Section 301 of the LMRA, provides:

(a) Venue, amount, and citizenship. Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

■ "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective bargaining agreement.'" *Caterpillar,* 482 U.S. at 394, 107 S.Ct. at 2431.

■ The Court finds that the Retaliatory Discharge claim of Count One is not completely preempted by § 301 of the LMRA under the Complete Preemption Doctrine for purposes of removal and, therefore, is not removable to this Court. The Court makes no finding whether NLRA preemption is a valid or invalid defense to the Retaliatory Discharge claim on the merits.

The Retaliatory Discharge (Count One) claim alleges that Plaintiffs were discharged because they were not union members, in violation of Tennessee's "Right to Work" law, Tennessee Code Annotated Section 50–1–201. The Tennessee Supreme Court recognized the tort of retaliatory discharge in *Clanton v. Cain–Sloan Co.,* 677 S.W.2d 441 (Tenn.1984).

■ The elements of the tort of retaliatory discharge, under Tennessee law, are "an employment-at-will relationship; a clear declaration of public policy which imposes duties upon the employee or employer; and discharge of the employee for refusing to violate those duties." *Reynolds v. Ozark Motor Lines, Inc.,* 887 S.W.2d at 825.

The Retaliatory Discharge (Count One) claim is not "founded directly" on rights created by a collective bargaining agreement between Pirelli and the Unions. *Caterpillar,* 482 U.S. at 394, 107 S.Ct. at 2431. The Retaliatory Discharge claim, to the contrary, is founded on Tennessee's "Right to Work" law.

Section 301 of the LMRA, by its terms, applies only to "suits for violation of contracts between an employer and labor organization." The Retaliatory Discharge claim does not allege a "violation" of a "contract between an employer and labor organization."

The Retaliatory Discharge claim, likewise, is not "substantially dependent on analysis" of a collective bargaining agreement. *Id.* No provision of a collective bargaining agreement is at issue or needs interpretation or analysis to resolve the claim. Indeed, the Retaliatory Discharge Count never even mentions any agreement between Pirelli and the Unions.

The Supreme Court in *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) held that a state retaliatory discharge claim was not preempted by § 301 of the LMRA because no interpretation of a collective bargaining agreement was required to adjudicate the claim.

The Court, therefore, finds that the Retaliatory Discharge claim is not completely preempted by § 301 of the LMRA for purposes of removal.

■ The Interference with Contract (Count Three) claim, as it appears on the face of the Complaint, also is not completely preempted by § 301 of the LMRA for purposes of removal and, thus, is not removable to this Court. The Court makes no finding whether NLRA preemption is a valid or invalid defense to the Interference with Contract claim on its merits.

The Interference with Contract claim alleges that the Unions interfered with individual "permanent replacement" contracts between Plaintiffs and Pirelli (¶¶ 59 and 66). What is not at issue on the face of Count Three is a contract between Pirelli and the Unions.

The tort of interference with contract has long been recognized in Tennessee statutory and common law. Tennessee Code Annotated Section 47–50–109 dates back to 1907. The tort was also firmly settled in Tennessee common law by the time of *Hutton v. Waters,* 4 Tenn.C.C.A. (Higgins) 582 (1914).

■ "Under Tennessee law, there are seven elements to an action for inducement to breach a contract, both at common law and under Tennessee Code Annotated Section 47–50–109.... The plaintiff must prove: (1) that there was a legal contract; (2) that the wrongdoer had sufficient knowledge of the contract; (3) that the wrongdoer intended to induce its breach; (4) that the wrongdoer acted maliciously; (5) that the

contract was breached; (6) that the act complained of was the proximate cause of the breach; and (7) that damages resulted from the breach." *TSC Indus., Inc. v. Tomlin,* 743 S.W.2d at 173.

The Interference with Contract claim in this case is not "founded directly" on rights created by a collective bargaining agreement between Pirelli and the Unions. *Caterpillar,* 482 U.S. at 394, 107 S.Ct. at 2431. It is founded on the Unions' alleged interference with individual "permanent replacement" employment contracts between the Plaintiffs and Pirelli.

The Interference with Contract Count also is not a "suit for violation of contracts between an employer and labor organization," as provided by § 301 of the LMRA. It is not even a suit on a contract, much less a contract between an employer and a Union. The Court in *Caterpillar,* moreover, makes it clear that "Section 301 says nothing about the content or validity of individual employment contracts." *Caterpillar,* 482 U.S. at 394, 107 S.Ct. at 2431.

The Interference with Contract claim, similarly, is not "substantially dependent on analysis" of a collective bargaining agreement based on the face of the Complaint. *Id.* No provision of a collective bargaining agreement must be interpreted or analyzed to determine the merits of the claim as written.

Plaintiffs allege that the Unions "induced" Pirelli to terminate the Plaintiffs' employment "in conjunction with" a collective bargaining agreement (¶ 65). Count Three, significantly, does not allege as a necessary element of the tort of interference with contract that the Defendants "agreed" in the collective bargaining agreement, or otherwise, to terminate Plaintiffs.[3]

■ The Interference with Contract claim merely alleges that the Unions "induced" Pirelli to terminate the Plaintiffs.

---

3. Compare Civil Conspiracy (Count Four) at ¶ 73(a) ("entering into an agreement").

   The "Background Facts" of the Complaint at ¶ 36 allege that Pirelli and the Unions "agreed" to terminate the Plaintiffs. Count Three incorporates ¶ 36 by reference (¶ 58). However, the

facts asserted in ¶ 36 are not expressly alleged to support any necessary element of the tort of interference with contract as discussed above. Such pleading is too ambiguous for this Court to hold that it has subject matter jurisdiction.

(¶¶ 65, 67, and 70). The Unions could have "induced" Pirelli to terminate the Plaintiffs without there being an "agreement" among them to do so. Inducement may include, but does not necessarily require, an agreement. An agreement to interfere with a contract is not a necessary element of the tort of interference with contract under Tennessee law. *TSC Indus., Inc.,* 743 S.W.2d at 173.

Accordingly, it is not apparent from the face of the Complaint that the Interference with Contract claim requires any interpretation of the collective bargaining agreement. But, in any event, the Interference with Contract Count is not "substantially" dependent on an analysis of the collective bargaining agreement, as is required for complete preemption, based on the Complaint as written.

■■■■ Defendants argue that the Court must interpret the collective bargaining agreement, or the strike settlement agreement, to resolve the Interference with Contract claim. Defendants have the burden of proving jurisdiction to support removal. Removal under the Complete Preemption Doctrine cannot be based on "facts not alleged in the Complaint." *Caterpillar,* 482 U.S. at 391, 107 S.Ct. at 2431.

Defendants may or may not ultimately be correct that the collective bargaining agreement, or the strike settlement agreement, must be interpreted to determine the Interference with Contract Count. But, what is important for purposes of this Motion to Remand is that it is not sufficiently clear from the face of the Complaint that the Court must interpret the collective bargaining agreement, or the strike settlement agreement, to adjudicate the Interference with Contract claim. The allegations in the Complaint are simply too ambiguous to give this Court subject matter jurisdiction. The Defendants have not carried their burden of proof. This issue will be revisited by the Court as the case develops, as is more fully described herein.

The Court, therefore, finds that the Interference with Contract claim is not completely preempted by § 301 of the LMRA for purposes of removal.

■■■ The claim for Civil Conspiracy (Count Four) produces a different result. The Court finds that the Civil Conspiracy claim is completely preempted under the Complete Preemption Doctrine and, therefore, the case is removable pursuant to 28 U.S.C. § 1441(c). "Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim and, therefore, arises under federal law." *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430.

A civil conspiracy, under Tennessee law, is "a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *Braswell v. Carothers,* 863 S.W.2d at 727.

The Civil Conspiracy Count alleges that the Defendants combined for the purpose of terminating the Plaintiffs' employment in violation of Tennessee and federal law (¶ 72).

The first "overt act" alleged in "furtherance of this civil conspiracy" is:

> Pirelli, the URW and URW Local 670 negotiating and *entering into an agreement* that the permanent replacement workers would be terminated following the end of the strike.

(¶ 73(a)) (emphasis added).

This is an allegation that a strike settlement agreement between Pirelli and the Union included an "agreement" that the Plaintiffs would be terminated. Such a conclusion is supported by the background factual allegations in ¶ 36 of the Complaint, which provides:

> Pirelli and the URW and URW Local 670 *agreed* that the permanent replacement workers would be terminated following the end of the strike.

(emphasis added).

A key question in resolving the Civil Conspiracy claim is what were the terms of the strike settlement agreement between Pirelli and the Unions. It is particularly important to know what was agreed to by Pirelli and the Unions regarding termination of the Plaintiffs.

The Supreme Court has held that § 301 of the LMRA applies to strike settlement agreements. *Retail Clerks Int'l Assoc. v. Lion Dry Goods, Inc.*, 369 U.S. 17, 28, 82 S.Ct. 541, 548, 7 L.Ed.2d 503 (1962). The *Lion* Court held:

> We need not decide whether or not this strike settlement agreement is a "collective bargaining agreement" to hold, as we do, that it is a "contract" for purposes of § 301(a).... It is enough that this is clearly an agreement between employers and labor organizations significant to the maintenance of labor peace between them. It came into being as a means satisfactory to both sides for terminating a protracted strike and labor dispute.

*Id.*

Section 301 of the LMRA, by its terms, applies to "suits for violations of contracts between an employer and labor organization." The Civil Conspiracy claim does not allege a "violation" of a "contract between an employer and labor organization." It alleges that the contract to terminate the Plaintiffs was implemented, not violated. Thus, § 301 does not apply to the Civil Conspiracy claim on that basis.

Section 301 LMRA preemption, however, does apply to the Civil Conspiracy claim under the Complete Preemption Doctrine for two reasons. First, resolution of the Civil Conspiracy claim is "substantially dependent" on an analysis of the terms of the strike settlement agreement. *Caterpillar*, 482 U.S. at 394, 107 S.Ct. at 2430. What Pirelli and the Unions agreed to regarding termination of the Plaintiffs is crucial to the Civil Conspiracy claim. Second, the Civil Conspiracy claim is "founded directly" on the strike settlement agreement. *Id.* The terms of the strike settlement agreement is the main overt act alleged as the factual basis for the "combination" and, thus, is a necessary element of the Civil Conspiracy claim.

The Civil Conspiracy claim and the strike settlement agreement are, therefore, inextricably intertwined. "Section 301 preempts claims that are 'inextricably intertwined with consideration of the terms' of a collectively-bargained labor contract." *In re*

*General Motors Corp.*, 3 F.3d 980, 984 (6th Cir.1993); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). Accordingly, the Complete Preemption Doctrine applies to support removal of this case to this Court.

In conclusion, the Motion to Remand (Docket No. 7) is DENIED for the reasons stated above.

Plaintiffs shall have thirty (30) days to amend the Civil Conspiracy (Count Four) claim of the Complaint to attempt to state a § 301 LMRA claim or the Civil Conspiracy (Count Four) claim shall be dismissed with prejudice without further order of this Court.

Plaintiffs are ORDERED to amend the Interference with Contract (Count Three) claim of the Complaint to clarify if it is based in any manner on an agreement between Pirelli and the Unions to terminate the employment of Plaintiffs. Plaintiffs shall expressly state whether or not the Interference with Contract (Count Three) claim is based directly, or indirectly, on an agreement or contract between Pirelli and the Unions to terminate the Plaintiffs. Plaintiffs shall have thirty (30) days to amend Count Three. The Court will then revisit the question of whether the Complete Preemption Doctrine applies to the Interference with Contract (Count Three) claim for purposes of the Motion to Remand.

The Court exercises its discretion pursuant to 28 U.S.C. § 1441(c) to retain jurisdiction over all four counts of the Complaint. However, if after Plaintiffs amend their Complaint only state law claims remain, then the Court shall remand the state claims to the Circuit Court, Twentieth Judicial District, Nashville, Davidson County, Tennessee.

It is so ORDERED.