# United States Court of Appeals
## For the First Circuit

No. 08-2390

RHODE ISLAND FISHERMEN'S ALLIANCE, INC., ET AL.,

Plaintiffs, Appellants,

v.

RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Torruella, Selya and Howard, Circuit Judges.

Robert J. Caron for appellants.
Sean H. Donahue and Gary E. Powers, Chief Deputy Legal
Counsel, Department of Environmental Management, with whom Donahue
& Goldberg, LLP, Terence J. Tierney, Special Assistant Attorney
General, Mark A. McSally, and Kelly, Kelleher, Reilly & Simpson
were on consolidated brief, for appellees.

October 23, 2009

**SELYA, Circuit Judge**. This appeal brings us face to face with two exotic creatures: the American lobster and a state-law claim that may or may not contain an embedded federal question sufficient to ground a claim of original jurisdiction under 28 U.S.C. § 1331 (commonly known as "federal question" jurisdiction). Cases of this sort require courts to venture into a murky jurisprudence. The answers are rarely black or white but, rather, more often doused in varying shades of gray. The difficult jurisdictional question presented here is no exception.

The underlying case began as a state-court challenge to regulations promulgated by the Rhode Island Department of Environmental Management (DEM). Those regulations imposed restrictions on lobster-trap allocations for Rhode Island waters. The challenge to them centers on the DEM's alleged use of retroactive control dates in composing the regulatory scheme.[1]

The DEM thought that it was obliged to adopt the retroactive control dates by federal law. Accordingly, it removed the case to the federal district court. The plaintiffs moved to remand, but the district court refused to relinquish jurisdiction.

_____

[1] A "control date" is "[a] cut off date for potential use in establishing eligibility criteria for future access to a fishery." 12-080-054 R.I. Code. R. 5.17. Neither the relevant statute nor the challenged regulation, however, defines the term "retroactive control date." The plaintiffs aver that the DEM employed "retroactive control dates" by limiting, in 2006, fishermen's future access to fishing resources based on each fisherman's documented catch during 2001-2003.

R.I. Fishermen's All., Inc. v. Dep't of Envtl. Mgmt. (RIFA I), No. 07-230 (D.R.I. Nov. 5, 2007) (unpublished order). The court subsequently granted summary judgment in favor of the defendants. R.I. Fishermen's All., Inc. v. Dep't of Envtl. Mgmt. (RIFA II), No. 07-230, 2008 WL 4467186, at *16 (D.R.I. Oct. 3, 2008).

After careful consideration of the plaintiffs' ensuing appeal, we agree that the district court appropriately exercised federal question jurisdiction over the case. Once the jurisdictional puzzle is solved, the challenge to the regulations is easily dispatched. The tale follows.

## I. BACKGROUND

We rehearse here the regulatory framework and travel of the case to the extent needed to place this appeal in perspective.

### A. Regulatory Framework.

In 1942, Congress consented to and approved the Atlantic States Marine Fisheries Compact (the Compact), an interstate agreement among fifteen states (including Rhode Island) and the District of Columbia. See Pub. L. No. 77-539, 56 Stat. 267. All the signatories are situated close to the Atlantic coast.

Under the Compact, the signatories are to exercise joint regulatory oversight of their fisheries through the development of interstate fishery management plans. See Medeiros v. Vincent, 431 F.3d 25, 27-28 (1st Cir. 2005). Originally, participation in any given fishery management plan was voluntary. Id. In 1993,

-3-

however, Congress implanted some teeth in the Compact by adopting the Atlantic Coastal Fisheries Cooperative Management Act (the Management Act), Pub. L. No. 103-206, 107 Stat. 2447 (codified at 16 U.S.C. §§ 5101-5108).

Among other things, the new law made state compliance with fishery management plans compulsory. See 16 U.S.C. § 5104(b)(1). It also designated the Atlantic States Marine Fisheries Commission (the Commission) as the body that would prepare and adopt interstate fishery management plans. Id. §§ 5102(3); 5104(a)(1). The Commission works through species-specific management boards (such as the American Lobster Management Board) to develop such plans.

Once a plan is formulated and approved, each affected state is required to implement it, usually through the medium of state laws and regulations. See Medeiros, 431 F.3d at 27-28. The Commission itself monitors compliance. 16 U.S.C. § 5104(c). If a state fails to comply with an approved plan, the Commission may notify the Secretary of Commerce, who has the power to impose a moratorium on fishing of the relevant species in the waters of the noncompliant state. Id. § 5106(c).

In 1997, the Commission decided to take steps to combat rampant overfishing of lobster stock. In a determined effort to protect the supply of these appetizing arthropods, it adopted Amendment 3 to the Interstate Fishery Management Plan for American

-4-

Lobster. Then, worried about especially rapid depletion of the lobster stock in "Area 2" — the waters off Massachusetts and Rhode Island — the American Lobster Management Board engrafted Addendum VII onto Amendment 3. Addendum VII requires these states to allocate lobster traps to fishermen based on each fisherman's documented lobster catch during 2001-2003. See Addendum VII, § 2.1.1.

In 2006, the DEM adopted Regulation 15.14.2 for the avowed purpose of "bring[ing] the State of Rhode Island into compliance with Addendum VII." 12-080-012 R.I. Code R. § 15.14.2-1. The taking of lobsters in Rhode Island waters requires either a federal permit or a state license. See R.I. Gen. Laws § 20-2.1-4(a); 12-080-012 R.I. Code R. § 15.1. The state's licensing scheme, in turn, involves lobster-trap allocations. See 12-080-012 R.I. Code R. § 15.14.2. Under the new regulation, eligibility for a lobster-trap allocation depends, inter alia, on a showing (i) that the applicant held a DEM-issued commercial lobster license or federal permit for Area 2 at some time in the 2001-2003 time frame; and (ii) that he had documented lobster landings from traps in Area 2 during that time frame. Id. § 15.14.2-6.

## B. Proceedings Below.

Distressed by what they perceived as the use of retroactive control dates in the new regulatory framework, the lobstermen clawed back. On June 4, 2007, the Rhode Island

-5-

Fishermen's Alliance, a trade organization acting by and through its president, Richard Fuka, and eight individual lobster fishermen (Steven Riley, Brian Loftes, Stephen Mederios, Greg Duckworth, Vincent Carvalho, Peter DiBiase, Robert Morris, and Andrew Cavanagh) filed a complaint for declaratory judgment against the DEM and its director, Michael Sullivan, in his official capacity, in a Rhode Island state court. The plaintiffs alleged that the adoption of Regulation 15.14.2 violated the Rhode Island Constitution and an array of Rhode Island statutes.

Despite the fact that the complaint alleged only state-law causes of action, defendants DEM and Michael Sullivan invoked federal question jurisdiction, 28 U.S.C. § 1331, and removed the case to the United States District Court for the District of Rhode Island. Shortly thereafter, the Commission and the Rhode Island Lobstermen's Association, along with seven individual lobster fishermen (Al Christopher, Lanny Dellinger, Al Eagles, Aaron Gerwitz, Michael Marchetti, Harry Towne, and Russ Wallace), filed motions to intervene, which were granted by the district court. The plaintiffs challenged the existence of federal jurisdiction and asked the district court to remand the case to the state court. The district court denied their motion. RIFA I, at 11.

The case proceeded in the federal forum. In due season, the parties cross-moved for summary judgment. In a well-reasoned

-6-

rescript, the district court granted the defendants' motion and denied the plaintiffs' motion. RIFA II, 2008 WL 4467186, at *16.

The plaintiffs now appeal both the denial of their motion to remand and the entry of summary judgment in favor of the defendants. We have jurisdiction under 28 U.S.C. § 1291, and we affirm both rulings.

## II. ANALYSIS

We divide our analysis into two main segments. We first address the tangled jurisdictional issue and then briefly address the merits.

### A. Jurisdiction.

The district court denied the motion to remand without an evidentiary hearing. Thus, we review de novo the propriety of that order (and, thus, the court's underlying conclusion that it had subject matter jurisdiction over the action). See Fayard v. N.E. Vehicle Servs., LLC, 533 F.3d 42, 45 (1st Cir. 2008).

Removal of a civil action from state to federal court is proper only if the action initially could have been brought in the federal court. 28 U.S.C. § 1441(a). Because the defendants concede that there is no conceivable basis for federal jurisdiction apart from 28 U.S.C. § 1331, the propriety of removal hinges on whether the district court had federal question jurisdiction. See Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 11 n.9 (1983).

The relevant statute grants federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. There is no mechanical test for determining when an action "aris[es] under" federal law. See Franchise Tax, 463 U.S. at 8 (noting that the phrase "arising under" has "resisted all attempts to frame a single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts"). This does not mean, however, that we are left rudderless on a sea of uncertainty.

Experience teaches that there are two types of actions that fall within the encincture of federal question jurisdiction. The first (and most familiar) category involves direct federal questions; that is, suits in which the plaintiff pleads a cause of action that has its roots in federal law (say, a claim premised on the United States Constitution or on a federal statute). See, e.g., Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916) (Holmes, J.); Almond v. Capital Props., Inc., 212 F.3d 20, 23 (1st Cir. 2000). The second (and far more rare) category involves embedded federal questions; that is, suits in which the plaintiff pleads a state-law cause of action, but that cause of action "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal

-8-

and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005); accord Smith v. Kan. City Title & Trust Co., 255 U.S. 180, 201-02 (1921).

These categories have some commonalities. Most prominently, every putative federal question case must pay tribute to the well-pleaded complaint rule. As this shorthand nomenclature suggests, the rule requires the federal question to be stated on the face of the plaintiff's well-pleaded complaint. See Franchise Tax, 463 U.S. at 13 (holding that federal question jurisdiction extends to "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law"). To satisfy the rule, the plaintiff's well-pleaded complaint must exhibit, within its four corners, either an explicit federal cause of action or a state-law cause of action that contains an embedded question of federal law that is both substantial and disputed. See W. 14th St. Comm'l Corp. v. 5 W. 14th Owners Corp., 815 F.2d 188, 193 (2d Cir. 1987). The existence of a federal defense to a state-law cause of action will not suffice. See Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908).

In the case at hand, the plaintiffs have pleaded nothing but state-law causes of action. Consequently, the jurisdictional

inquiry reduces to whether an embedded federal question afforded the district court original jurisdiction over the action.

The plaintiffs' complaint limns a wide variety of state constitutional and statutory claims, attacking the DEM's regulatory scheme from a number of vantage points. Importantly, however, all of these causes of action derive from a common nucleus of operative fact. Thus, if the district court had original jurisdiction over any one of these causes of action, then it had supplemental jurisdiction over the rest, see 28 U.S.C. § 1367; United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1176-77 (1st Cir. 1995); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350-51 (1988) (holding that the supplemental jurisdiction statute applies with equal force to cases removed to federal court), and we must answer the jurisdictional question affirmatively. Mindful of this reality, we focus the lens of our inquiry on the most promising candidate for federal jurisdiction: the plaintiffs' claim that the adoption of Regulation 15.14.2 violated R.I. Gen. Laws § 20-2.1-9.

In undertaking this task, we follow the three-step progression suggested by the Supreme Court's decision in Grable, 545 U.S. at 313-16. We start with the most pressing concern: whether the plaintiffs' well-pleaded complaint necessarily raises a federal question. If so, we then mull whether the federal question is actually disputed and substantial. And if the question survives

-10-

scrutiny on these points, we last consider whether that question is one that a federal court may entertain without impermissibly tilting the balance of federal and state judicial responsibilities.

1. **Necessity**.  In count 5 of their complaint, the plaintiffs allege that the defendants violated R.I. Gen. Laws § 20-2.1-9.  This statute, in the process of delineating the powers and duties of the director of the DEM, provides in pertinent part that "retroactive control dates are prohibited and shall not be used or implemented, unless expressly required by federal law, regulation or court decision."  The plaintiffs allege that the director transgressed this prohibition by adopting Regulation 15.14.2-6 (which in their view employs retroactive control dates).  This charge rests on the plaintiffs' argument that retroactive control dates were not expressly required by federal law because that "requirement" — supposedly found in Addendum VII — was unenforceable under the Management Act or, in the alternative, because Amendment 3 allows for "conservation equivalency" measures (and, thus, allowed Rhode Island to propose an alternative scheme to achieve the goals of Addendum VII without recourse to retroactive control dates).

We conclude that the plaintiffs' well-pleaded complaint establishes that their asserted right to relief under state law requires resolution of a federal question.  To prevail on the asserted cause of action, the plaintiffs had to show that the defendants violated R.I. Gen. Laws § 20-2.1-9.  This, in turn,

-11-

required them to show (i) that the director mandated retroactive control dates, notwithstanding (ii) that retroactive control dates were not compulsory under federal law. Thus, it is not logically possible for the plaintiffs to prevail on this cause of action without affirmatively answering the embedded question of whether federal law, in the form of a fishery management plan promulgated under the Compact, "expressly required" the use of retroactive control dates. That is enough to make out a federal question. See Cuyler v. Adams, 449 U.S. 433, 438 (1981) (holding that interpretation of a congressionally sanctioned compact is a question of federal law). No more is exigible to surmount the first step of the Grable progression.

Indeed, the question of whether the director acted outside the scope of his authority in using retroactive control dates turns exclusively on the antecedent (and embedded) federal question of whether that act was expressly required by federal law. Section 20-2.1-9 affords the director a grant of authority to adopt retroactive control dates if, and only if, a "federal law, regulation or court decision" expressly requires their use. Thus, answering the state-law question of whether the director exceeded his authority necessarily entails answering the embedded federal question of whether federal law required him to act as he did.

Of course, a federal preemption defense to a state-law cause of action is insufficient to confer federal question

jurisdiction on a federal court. See Mottley, 211 U.S. at 152. The plaintiffs beseech us, by analogy, to apply that analysis here. We reject their importunings: although there may well be a preemption defense lurking in the wings,[2] that potential defense is not the hook on which we propose to hang federal question jurisdiction. Rather, the federal question here is inherent in the state-law question itself because the state statute expressly references federal law. Cf. Franchise Tax, 463 U.S. at 13 (declining to extend federal question jurisdiction where "California law establish[ed] a set of conditions, without reference to federal law" (emphasis supplied)).

The plaintiffs try in various ways to blunt the force of this reasoning. Their most loudly bruited refrain is that they "do not challenge the legality [of] any provision of the 'compact'." Appellants' Br. at 17. This is a red herring.

In this case, federal jurisdiction does not depend on the legality of either the Compact or one of its provisions. Instead, a different federal question is in play: a question of whether

_____

[2] For example, R.I. Gen. Laws § 20-2.1-9 may be read to suggest that it is violated when the director adopts retroactive control dates that, while not "expressly" required by federal law, are impliedly required. In that event, a defendant would be able to attack the state statute on the ground that it conflicts with federal law and is, therefore, preempted. See, e.g., Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 2 (1824). But that hypothetical defendant would have to mount this attack as a defense, which would not provide a sufficient basis for federal question jurisdiction. See Mottley, 211 U.S. at 152.

-13-

Addendum VII required the DEM to insert retroactive control dates into the state regulatory scheme. It is this latter question that undergirds the case for federal jurisdiction.

The plaintiffs also argue that their claims arise under Rhode Island law and, therefore, not under federal law. This argument sets up a false dichotomy. It presumes that claims cannot simultaneously arise under both federal and state law. That premise is faulty: federal jurisdiction extends to a case arising under federal law regardless of whether the cause of action itself has its genesis in state law. See Smith, 255 U.S. at 201-02.

Last but not least, the plaintiffs point to their complaint and protest that they mention only once that the defendants "essentially adopted . . . Addendum VII." In their view, that lone allegation — which is contained in the facts and travel portion of the complaint — cannot serve as a basis for federal jurisdiction.

This protestation is correct as far as it goes. Federal jurisdiction cannot be conjured up by a passing mention of some federal subject. Under the well-pleaded complaint rule, allegations in the complaint that are unnecessary to the statement of the relevant cause of action cannot themselves support a claim of federal question jurisdiction. See, e.g., Baldwin v. Pirelli Armstrong Tire Corp., 927 F. Supp. 1046, 1053 (M.D. Tenn. 1996); 13D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure

-14-

§ 3566 (3d ed. 1999).  We can assume, for argument's sake, that it was not necessary for the plaintiffs to allege that the DEM "essentially adopted . . . Addendum VII" and, thus, that federal jurisdiction could not be premised on that allegation.

In the end, this favorable assumption is small consolation to the plaintiffs.  Here, the claim of entitlement to a federal forum rests not on the reference in the complaint to Addendum VII but, rather, on the express incorporation of federal law into the state statute on which the plaintiffs' cause of action is grounded. That is a horse of quite a different hue.

2.  **Substantiality**.  Federal jurisdiction based on the presence of an embedded federal question requires a question that is both actually disputed and substantial.  Grable, 545 U.S. at 313. This requirement ensures that there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum."  Id.

We need not tarry in resolving the first part of this inquiry.  The parties have hotly contested the issue of whether federal law obliged the DEM to embrace the concept of retroactive control dates.  Thus, the federal question is actually disputed.

The second part of the inquiry likewise must be resolved in the defendants' favor.  There is a significant federal interest in making certain that states comply with federally sanctioned

-15-

interstate compacts.  See League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency, 507 F.2d 517, 523-24 (9th Cir. 1974).

Prior to passage of the Management Act, state compliance with interstate fishery management plans was voluntary.  That freedom resulted in "disparate, inconsistent, and intermittent State and Federal regulation," which proved "detrimental to the conservation and sustainable use of [fishery] resources." 16 U.S.C. § 5101(a)(3).  These shortcomings prompted Congress to adopt the Management Act.  See Joseph A. Farside, Jr., Note, Atlantic States Marine Fisheries Commission: Getting a Grip on Slippery Fisheries Management, 11 Roger Williams U. L. Rev. 231, 238-39 (2005).

The Management Act demands state compliance with fishery management plans adopted pursuant to the Compact.  See 16 U.S.C. § 5104(b)(1).  In that regard, the Act makes it pellucid that a single state's failure "to fully implement a coastal fishery management plan can affect the status of Atlantic coastal fisheries, and can discourage other States from fully implementing coastal fishery management plans." Id. § 5101(a)(5).

In addition, there is a substantial federal interest in ensuring that actions taken in pursuance of the Management Act receive the uniformity of interpretation that a federal forum offers.  This interest is underscored by the fact that Congress adopted the Management Act, in part, to achieve greater consistency in the regulation of fisheries.  See id. § 5101(a)(3).

**3.** **The Federal-State Balance**.  Even if a substantial and actually disputed federal question is embedded in a state-law claim, federal jurisdiction will not attach if its exercise will "disturb[] any congressionally approved balance of federal and state judicial responsibilities."  Grable, 545 U.S. at 314.  Consequently, we must determine whether federal jurisdiction is "consistent with congressional judgment about the sound division of labor between state and federal courts."  Franchise Tax, 463 U.S. at 8.

Congress could have, but did not, specifically assigned disputes touching upon the interpretation of interstate compacts to either the federal or state judicial systems.  The legislative background, therefore, is consistent with a division of responsibilities between the two court systems.

Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804 (1986), exemplifies a case in which exercise of federal jurisdiction over an embedded federal question would disturb the balance of federal and state judicial responsibilities.  There, the plaintiff filed a state tort action alleging, among other things, that a pharmaceutical manufacturer's failure to furnish an adequate warning for a product violated the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et. seq., and therefore created a rebuttable presumption of negligence.  478 U.S. at 805-06.  This, the defendant said, created an embedded federal question and, thus, supported removal of the case to federal court.

-17-

The Supreme Court disagreed. Because it is a common feature of state tort law that violation of any statute may give rise to a presumption of negligence, see Restatement of Torts § 14, Reporters' Note, cmt. a (Tent. Draft No. 1, 2001), extending federal jurisdiction would have "attracted a horde of original filings and removal cases" to federal courts — cases in which state tort actions were premised on violations of federal regulations. Grable, 545 U.S. at 318 (discussing Merrell Dow). The Court deemed it highly doubtful that Congress intended to permit a seismic shift in tort litigation from state to federal courts on the basis of the regulations at issue, particularly since Congress had neither preempted state remedies in the field nor created a private federal right of action to enforce the regulation. See id. at 319. The "threatening structural consequences" of opening the gates to federal question jurisdiction guided the Court's decision to reject the claim of federal question jurisdiction. Id.

This case is quite different. The statutory provision at issue, R.I. Gen. Laws § 20-2.1-9, is sui generis: the Rhode Island General Assembly's decision to make the limits of state agency authority dependent on federal law is an odd approach, not found in any case to which the parties have directed us. To hold that a claim under this unique statute can support federal question jurisdiction will not raise the specter of threatening structural

-18-

consequences (and, thus, will not disturb the delicate balance of federal and state judicial power).

To cinch matters, it is highly unlikely that there will be many additional suits under section 20-2.1-9, let alone a "horde of cases" wending their way to federal courts. Past is prologue, see William Shakespeare, The Tempest act 2, sc. 1 (circa 1610), and it does not appear that the statute has generated any suit other than this one.

To say more on this point would be supererogatory. We conclude both that Merrell Dow is distinguishable and that the exercise of federal jurisdiction over a cause of action predicated on section 20-2.1-9 "would not materially affect, or threaten to affect, the normal currents of litigation." Grable, 545 U.S. at 319-20. There is, therefore, insufficient cause "to shirk from federal jurisdiction over the dispositive and contested federal issue" that lies at the epicenter of this action.[3] Id.

**4. Recapitulation**. To sum up, in this case all roads lead to Rome. There is an embedded federal question; answering it is necessary to a resolution of the asserted state-law cause of action; that question is both actually disputed and substantial; and deciding it in a federal forum will not tilt any congressionally

---

[3] The fact that the embedded federal question in this case presents an abstract question of law reinforces this view. See Empire HealthChoice Assur., Inc. v. McVeigh, 547 U.S. 677, 700-01 (2006).

-19-

approved balance of federal and state judicial power.  Accordingly, we hold that the district court had jurisdiction over the action and did not err in denying the plaintiffs' motion to remand.

## B.  **The Merits**.

This brings us to the merits.  There is no need to tarry.

The plaintiffs' asseverational array involves claims that the contested regulation violates the Rhode Island Constitution and a myriad of state statutory provisions.  See R.I. Gen. Laws §§ 20-2.1-9, 20-7-9, 42-35-3, 42-35-3.3.  This onslaught boils down to two principal assertions.  First, the plaintiffs posit that the challenged regulation abridges their fundamental right of equal access to the fisheries, and denies them equal protection, R.I. Const. art. I, §§ 2, 17.  Second, they maintain that the Commission did not really mandate the use of retroactive control dates when Addendum VII was adopted and, thus, the challenged regulation offends R.I. Gen. Laws § 20-2.1-9.  The district court patiently explained why neither of these assertions holds water.  See RIFA II, 2008 WL 4467186, at *5-11 (rejecting arguments based on state constitution); id. at *12-14 (rejecting plaintiffs' suggested interpretation of Addendum VII).  The court also convincingly dispatched the plaintiffs' arguments arising out of other Rhode Island statutes.  See, e.g., id. at *11-12, *14-16.

We often have said, and today reaffirm, that when a trial court addresses issues squarely and in detail, writes a persuasive

-20-

opinion that faithfully applies the law to the facts, and reaches a correct result, there is no need for a reviewing court to write at length merely to hear its own words resonate. See, e.g., Vargas-Ruiz v. Golden Arch Dev., Inc., 368 F.3d 1, 2 (1st Cir. 2004) (collecting cases); Henry v. Connolly, 910 F.2d 1000, 1002 (1st Cir. 1990). This is precisely such an instance.

Here, the district court wrote a thoughtful and comprehensive rescript explaining its multi-faceted rationale for rebuffing the plaintiffs' challenge to the contested regulation and granted summary judgment accordingly. We largely agree with the reasoning set forth in the lower court's rescript, and uphold its merits ruling for substantially the reasons set forth in that opinion.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we affirm both the district court's denial of the plaintiffs' motion to remand and its grant of summary judgment in favor of the defendants.

**Affirmed**.