JOHN UCELLO *vs.* BARTHOLOMEW W. COSENTINO & others.

Norfolk.    January 3, 1968. — March 11, 1968.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Contract,* What constitutes, Execution, For sale of real estate. *Frauds, Statute of.*

The facts appearing in a suit in equity required conclusions that a proposed written contract between the plaintiff and several defendants pertaining to a Federal Housing Administration apartment house project and a transfer of land by the plaintiff and certain payments by the defendants was intended to become effective only upon its execution and delivery by all the parties and that it never did become effective and binding upon any of the defendants by reason of a refusal of one of them to execute it, although he advanced money for the project during the negotiations for the contract. [51–52]

The statute of frauds, G. L. c. 259, § 1, would preclude recovery on a contract involving a purchase of land against one who never signed the contract although he was named therein as a party and advanced money pursuant thereto. [52]

BILL IN EQUITY filed in the Superior Court on July 7, 1965.

The suit was heard by *Chmielinski,* J., on a master's report.

*Morris M. Goldings* for the plaintiff.

*George Michaels* for the defendants.

REARDON, J.  In this suit in equity the plaintiff seeks damages and an injunction against the foreclosure of a mortgage on land in Quincy.  The plaintiff has appealed from a final decree dismissing the bill and, on counterclaims, establishing indebtedness of the plaintiff to certain defendants.[1]  A master to whom the suit was referred found as follows.

On October 16, 1959, Perry Bird, Inc., a Massachusetts corporation of which the plaintiff was president, treasurer and controlling stockholder, executed a first mortgage on a 14.29 acre parcel of land in Quincy (hereinafter referred to as A) to Harold Morris to secure payment of a promissory note of even date in the sum of $60,000.  On April 25, 1961, this note and mortgage were assigned to Morris Finance Corp.  On August 28, 1963, the plaintiff filed with the Federal Housing Administration (FHA) an application for project mortgage insurance relative to an apartment project planned for the greater part of A.  This application was denied because the plaintiff and Hingham Bay Realty Trust, of which he was sole trustee, did not present sufficient means to serve as sponsors.  Thereafter the plaintiff met the defendant Larry L. Webb and interested him in his plans for the project.  Webb in turn interested the defendant Morris Feinstein, who had large sums available for real estate investment.  The three parties then entered into a written agreement dated January 27, 1964, which was subsequently cancelled by mutual consent.  Over the July 4, 1964, weekend the three parties met again, at which time the defendant Cosentino joined them.  They agreed to incorporate plans for the development of the land in a "formal written arrangement."  On July 7, 1964, a second application was filed with the FHA again seeking a construction loan.  Webb signed this application as trustee of the Hingham Bay Realty Trust.  On July 24, 1964, the FHA issued to a

---

[1] In view of the entry of the final decree, another decree entered simultaneously purporting to dissolve a temporary restraining order and to permit foreclosure of the mortgage was superfluous and is disregarded. *Lowell Bar Assn. v. Loeb,* 315 Mass. 176, 189–191.  *Carlson v. Lawrence H. Oppenheim Co.* 334 Mass. 462, 465–466.  *Morra v. City Clerk of New Bedford,* 340 Mass. 240, 244.

Boston bank as mortgagee, and to Feinstein and Webb as sponsors, a Commitment for Insurance of Advances in the sum of $3,393,000, to terminate in 180 days unless renewed or extended, and requiring the organization of a limited dividend corporation under G. L. c. 121A. Through July, August and September the parties continued to negotiate, and pursuant thereto Cosentino advanced $73,000 to pay off the first mortgage note secured by the mortgage on A, plus overdue interest, taking an assignment of the note and mortgage in the name of one D'Allesandro, his brother-in-law. On October 1, 1964, a formal written agreement prepared by an attorney for signature by the parties was signed by all of them save Feinstein who then refused and has continued to refuse to execute it. The agreement as drafted provided for the organization of the limited dividend corporation to be owned by the defendants who were to construct forthwith a housing development in accordance with the FHA commitment, and that upon its execution the plaintiff would convey to the defendants or their nominees A and two other parcels. It further stated that "[i]mmediately upon the transfer of the real estate . . . Webb, Feinstein, and Cosentino agree individually and severally to pay to . . . [the plaintiff] . . ." $155,000, $74,100 against the indebtedness due on the mortgage of A to D'Allesandro and $80,900 in cash. The agreement also provided for certain monthly payments to be made to the plaintiff as a "public relations man" for Hingham Bay Realty Trust, a corporation which was never organized. Subsequent to October 1, 1964, Webb and Feinstein advanced sums in excess of $30,000 for various expenses of the enterprise. The limited corporation was never formed because the requisite approval of the city of Quincy was withheld and the plaintiff was not paid the amounts he alleged to be due him under the agreement although he called upon the defendants to accept properly executed deeds of the three parcels in early February, 1965.

The plaintiff contends that at the least Cosentino and Webb are bound by the contract which they executed and

that Feinstein is also bound in that he joined in advancing sums to the enterprise on the day of the date of the agreement, October 1, 1964. In addition, he takes certain exceptions to the master's report.

1. The master concluded that "the alleged agreement dated October 1, 1964, was intended to take effect only upon its execution and delivery by all the parties, each to all others." This conclusion is sustained, as the defendants point out, by his subsidiary finding that during the period of negotiation "[s]everal drafts [of the agreement] were prepared . . . none of which met the approval of all concerned." Other subsidiary findings also support the conclusion. The agreement sets forth consideration for the undertakings of the parties as "a mutual covenant" and that its aim is "to effectuate the mutual purposes." It is clear that the intention of the parties could not be carried out unless Feinstein was signatory to the agreement and bound by it. The central purpose was to construct an "FHA guaranteed and financed private housing development" to be built "in accordance with a commitment for insurance . . . ." Examination of the commitment, an exhibit in the case, indicates that Feinstein was to guarantee the income of the project for the first year. Without Feinstein the commitment was worthless. Without the commitment the purposes of the agreement were frustrated. Furthermore, while there is reference in the draft to "several liability," the real estate was to be transferred to "Webb, Feinstein and Cosentino or their nominee or nominees . . . ."

"The intent of the parties must be gathered from a fair construction of the contract as a whole and not by special emphasis upon any one part." *Crimmins & Pierce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 375. *Standard Sanitary Mfg. Co.* v. *Hartford Realty Co.* 284 Mass. 540, 544. There is no question that the parties, as evidenced in the agreement read as a whole, proposed to be bound only after all named therein had signed it. This conclusion is supported by the master's recitation of the facts

which brought them together. The conclusions logically drawn from a review of the findings of the master are entirely consistent with this view. See *Cleveland* v. *Tupper,* 243 Mass. 163, 165. Any other interpretation would seem to negate the effect of the agreement as a rational business instrument and would produce a result unreasonable in the business context in which the parties acted. See *Berkal* v. *M. De Matteo Constr. Co.* 327 Mass. 329, 333; *New York Cent. R.R.* v. *New England Merchs. Natl. Bank,* 344 Mass. 709, 714–715; *McMahon* v. *Monarch Life Ins. Co.* 345 Mass. 261, 264. It follows that the plaintiff cannot prevail under the agreement.

2. The plaintiff has no separate right of recovery against Feinstein whom he seeks to hold on a matter involving the purchase of land. However, the statute of frauds, G. L. c. 259, § 1, requires a writing signed by Feinstein and there is none. *Freeman* v. *Fishman,* 245 Mass. 222, 226, 227. See *Michelson* v. *Sherman,* 310 Mass. 774, 776–777. That Feinstein during the period of negotiations advanced certain monies to the project of the parties does not establish any liability on him under the terms of the agreement which he never executed.

3. Finally, in our opinion, a review of the master's report fails to demonstrate, as alleged by the plaintiff, subsidiary findings vitiating the ultimate findings which he made.

4. The final decree is to be modified by adding an order that the plaintiff pay the amounts adjudged to be due to certain defendants. *Jones* v. *Fraser,* 305 Mass. 147, 149. *Whitman* v. *Jones,* 322 Mass. 340, 344. As so modified the final decree is affirmed with costs of appeal.

*So ordered.*