# United States Court of Appeals

## For the First Circuit

No. 09-1376

GREAT CLIPS, INC.,

Plaintiff, Appellee,

v.

HAIR CUTTERY OF GREATER BOSTON, L.L.C.; GREAT CUTS, INC.,

Defendants, Appellants.

_____

RATNER COMPANIES, L.C., d/b/a Hair Cuttery and Great Cuts,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before
Boudin and Selya, Circuit Judges,
and Laplante,* District Judge.

Jonathan D. Frieden (pro hac vice)with whom Odin, Feldman &
Pittleman, P.C., Bruce E. Falby and DLA Piper LLP (US) were on
brief for appellants.
Jan M. Conlin with whom Christopher K. Larus, Jonathan D.
Mutch and Robins, Kaplan, Miller & Ciresi L.L.P. were on brief for
appellee.

January 5, 2010

---

*Of the District of New Hampshire, sitting by designation.

**BOUDIN**, **Circuit Judge**. This appeal is about a trademark dispute between companies in the hair care industry. The plaintiff is Great Clips, Inc. (a Minnesota corporation), which owns and operates hair salons throughout the United States and Canada; the two defendants--Great Cuts, Inc. (a Massachusetts corporation) and Hair Cuttery of Greater Boston, L.L.C. (a limited liability company organized under the laws of Virginia)--provide hair cutting and styling services in Massachusetts and elsewhere. The background events are essentially undisputed.

In 1985, Great Clips registered a trademark, "GREAT CLIPS," for hair cutting and styling services, with the United States Patent and Trademark Office ("PTO"). Thereafter, Dalan Corporation ("Dalan"), a Massachusetts corporation that is Great Cuts and Hair Cuttery's predecessor-in-interest, sought to register with the PTO the trademark "GREAT CUTS" for hair care services and products. Great Clips opposed Dalan's trademark registration application in a proceeding before the PTO's Trademark Trial and Appeal Board, and Dalan countered by petitioning for the cancellation of Great Clips' trademark.

In December 1989, Great Clips and Dalan entered into a settlement agreement stipulating to the withdrawal of their respective claims and each agreed not to object further to the registration of the other's trademark. Critical to the present dispute is paragraph 4 of that agreement, which reads: "Each party

releases the other from any and all claims that arise or may arise from the application and registration of its own respective mark(s) mentioned in this agreement." Following the agreement, Dalan obtained federal registration for its trademark and Great Clips retained federal registration for its own mark.

Nineteen years passed without incident, but in 2008, Great Clips entered into agreements for franchisees to open stores in Massachusetts and New Hampshire using the GREAT CLIPS mark. By then, Dalan had transferred pertinent rights and interests in the GREAT CUTS trademark to Hair Cuttery and Great Cuts, which became Dalan's successors-in-interest to the settlement agreement. In May and June of 2008, Dennis Ratner, an executive at Hair Cuttery, advised Great Clips' chief executive that Hair Cuttery planned to sue Great Clips to prevent it from using the GREAT CLIPS mark in the New England market, contending that such use would impair Hair Cuttery's use of the GREAT CUTS mark.

Great Clips then sued Hair Cuttery and Great Cuts in federal district court in Massachusetts seeking a declaration that Great Clips was entitled to use its GREAT CLIPS mark in the United States, that its use of the mark in New England would not infringe any of the defendants' trademark rights, and that the settlement agreement precluded the defendants from asserting otherwise. Hair Cuttery and Great Cuts counterclaimed for damages and injunctive relief against Great Clips, asserting trademark confusion and

dilution, unfair competition, and unfair and deceptive trade practices under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), (c) (2006), and under state law, Mass. Gen. Laws chs. 93A, 110H (2009).

On cross-motions for summary judgment, the district court granted Great Clips' request for declaratory judgment by deciding that the settlement agreement entitled Great Clips to use its federally registered mark without geographic limitation, and therefore rejected Great Cuts and Hair Cuttery's counterclaims. Great Clips, Inc. v. Hair Cuttery of Greater Boston, L.L.C., No. 08-cv-10959, 2009 U.S. Dist. LEXIS 14281, at *1-2, *25 (D. Mass. Feb. 18, 2009). Hair Cuttery and Great Cuts now appeal, arguing that the district court misconstrued the settlement agreement and that their counterclaims should have survived its summary judgment decision.

At the threshold, we must consider our subject matter jurisdiction because it might be debated, even though neither party has contested it. Fafel v. DiPaola, 399 F.3d 403, 410 (1st Cir. 2005). Conceivably there is diversity jurisdiction as well but, as the parties do not address the amount in controversy (or the citizenship of the members of the Hair Cuttery limited liability company), we begin (and end) with federal question jurisdiction, which has no minimum amount in controversy. Compare 28 U.S.C. § 1331 (2006), with id. § 1332.

In a declaratory action, the familiar well-pleaded complaint rule asks whether there would "necessarily" be federal jurisdiction "if the declaratory judgment defendant brought a coercive action [corresponding to the declaration sought] to enforce its rights." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 19 (1983); Am. Airlines, Inc. v. Cardoza-Rodriguez, 133 F.3d 111, 115 n.1 (1st Cir. 1998). As we have stated:

> [W]here the declaratory judgment action is brought as an anticipatory defense to an expected . . . [coercive] action . . . it is the character of the threatened action . . . which will determine whether there is federal-question jurisdiction . . . .

Colonial Penn Group, Inc. v. Colonial Deposit Co., 834 F.2d 229, 233 (1st Cir. 1987) (internal quotation marks omitted) (quoting Pub. Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 248 (1952)). A fair interpretation of Hair Cuttery's threats include the likely assertion of federal rights under the Lanham Act and this suffices to establish federal-question jurisdiction. See PHC, Inc. v. Pioneer Healthcare, Inc., 75 F.3d 75, 78-79 (1st Cir. 1996).

Turning to the merits, the parties assume that Massachusetts law governs the interpretation of the settlement agreement, a colorable position that we accept, Nagle v. Acton-Boxborough Reg'l Sch. Dist., 576 F.3d 1, 3 (1st Cir. 2009), although the relevant doctrines in Massachusetts governing contract interpretation may not differ from those used in any other state

connected with the settlement agreement. A grant of summary judgment by the district court is reviewed <u>de novo</u>. <u>Insituform Techs., Inc.</u> v. <u>Am. Home Assurance Co.</u>, 566 F.3d 274, 276 (1st Cir. 2009).

Great Clips' position is that the potential Lanham Act and state law claims fail because the settlement agreement effectively surrenders Dalan's (and therefore the defendants') rights to object to Great Clips' use of the GREAT CLIPS trademark in connection with hair services or products. By contrast, Hair Cuttery and Great Cuts argue that paragraph 4 releases Great Clips only from claims about registration of the mark, not from claims that arise from Great Clips' infringing <u>use</u> of the mark, or at least that the agreement is ambiguous on that point and should be presented to a jury.[1]

The defendants' claim to a jury trial goes nowhere. In Massachusetts, as elsewhere, contracts are construed by the judge unless extrinsic evidence is offered to resolve supposed ambiguity, <u>Principal Mut. Life Ins. Co.</u> v. <u>Racal-Datacom, Inc.</u>, 233 F.3d 1, 3 (1st Cir. 2000); in the latter event, the dispute may go to a jury so that it can resolve the underlying factual issues, <u>Fishman</u> v. <u>LaSalle Nat'l Bank</u>, 247 F.3d 300, 303 (1st Cir. 2001). Defendants

---

[1]Defendants do not argue that under the agreement related claims under state law fare any better than Lanham Act claims, nor do they argue that the settlement agreement permitted use of the GREAT CLIPS trademark only in specified parts of the country.

were free in the summary judgment proceedings to identify pertinent extrinsic evidence (such as alleged discussions of the parties at the time they entered into the settlement) or to seek discovery based on some concrete indication that pertinent evidence might be found; but they do not appear to have done either.[2]

Paragraph 4, which the parties treat as central and which we have set forth above, mutually releases the parties "from any and all claims that arise or may arise from the application and registration" of their respective marks. Indisputably, this includes claims by defendants as to the validity of Great Clips' registered mark; but defendants read narrowly the phrase "application and registration" as limiting the release to claims that arise in the registration process itself--for example, a claim of fraud in obtaining registration--and not extending to any later use of the registered mark or marks in commercial activities.

Defendants' reading might be a permissible one as a matter of language, but their narrow reading is in tension with other language in paragraph 4 stressing the breadth of the precluded claims. Little light is cast on our problem by each

_____

[2]No such evidence is identified in the defendants' principal brief on appeal. In their summary judgment papers, the defendants said in general terms that if they did not prevail on summary judgment they wanted discovery, but without some indication that discovery had some prospect of being fruitful, such a boilerplate reservation is not enough to defeat summary judgment by the other side. See C.B. Trucking, Inc. v. Waste Mgmt., Inc., 137 F.3d 41, 45 (1st Cir. 1998).

-7-

side's proffer of dueling dictionary definitions of "application" and "registration," the terms' use in the Lanham Act or Massachusetts law, nor by various arguments based on rules of grammar. The apparent purpose of the settlement, and other provisions in the agreement, are more helpful guides.

Defendants may be right that the phrase "application and registration" refers to the written application for and registration of the trademarks but, even if so, trademarks are registered in order to be used and the substance of the agreement was that each side conceded the other's registration and anticipated use of the registered marks. The release is broadly phrased ("any and all claims"; "arise or may arise from"), and "Massachusetts case law instructs that the term 'arising out of' should be broadly construed." Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 6 (1st Cir. 2000).

Where language in a commercial contract leaves room for doubt, courts ask what one would be reasonable to expect in the business context faced by the parties. Ucello v. Cosentino, 235 N.E.2d 44, 47 (Mass. 1968); Clark v. State St. Trust Co., 169 N.E. 897, 903 (Mass. 1930). After all, the point is to effectuate the shared purpose that the parties intended to accomplish by their agreement. Kerrigan v. City of Boston, 278 N.E.2d 387, 393 (Mass. 1972); Clark, 169 N.E. at 903. See generally R.I. Charities Trust

v. <u>Engelhard Corp.</u>, 267 F.3d 3, 7 (1st Cir. 2001); <u>Fishman</u>, 247 F.3d at 302-03.

Here, the most likely aim was to permit the parties to use their respective registered marks in hair services and products, notwithstanding possible arguments on each side about potential confusion between their respective phrases--"Great Cuts" and "Great Clips." No evidence is offered that the parties sought only to allow each to register its mark but to reserve for future litigation the practical consequences of registration. Such an incomplete settlement is unlikely to have been the intended outcome; and, to accept it, we would require more pointed language or at the very least a proffer of extrinsic evidence.

Further, provisions of the agreement other than paragraph 4 reinforce the view that its language extended to future disputes about use of the marks and not just objections to registration. Notably, paragraph 6 states:

> 6. Greatclips is using the phrase "GREATCLIPS FOR HAIR" in connection with providing its products and services, and Dalan therefore agrees not to use the phrase "GREAT CUTS FOR HAIR" in connection with providing its products and services. Notwithstanding the above, Dalan may use the phrase it claims to have been using for several years, namely, "GREAT CUTS - FOR GREAT LOOKING HAIR AT A REALLY GREAT PRICE," or any other similar phrase.

As the district court judge explained, "Paragraph 6 is . . . most reasonably interpreted as a 'carve out' from ¶ 4, which released

-9-

all _other_ infringement claims arising from Dalan's use of the 'Great Cuts' mark." _Great Clips_, 2009 U.S. Dist. LEXIS 14281, at *20. In other words, Dalan was agreeing not _to use_ its own GREAT CUTS mark with the phrase "FOR HAIR," save as permitted by the last sentence of paragraph 6; paragraph 6 thereby preserved Great Clips' potential claim against Dalan for use of the mark in the prohibited fashion--a claim that would otherwise be precluded by paragraph 4.

Similarly, paragraph 7 addresses future use by stating:

> 7. Dalan agrees that if Greatclips, Inc. becomes aware of a use of the mark GREAT CUTS that is unauthorized by Dalan, Greatclips may pursue enforcement of its rights against such use and/or notify Dalan, and Dalan may give consideration to objecting to such use. Greatclips agrees to give the same consideration to any notification given it by Dalan concerning a use of the mark GREATCLIPS that is unauthorized by Greatclips.

The district court correctly explained that this paragraph, preserving each party's rights to bring claims against _third parties_ based on use of the other's mark, does not make sense unless paragraph 4 extended to bar some of the parties' use claims against _each other_. _Great Clips_, 2009 U.S. Dist. LEXIS 14281, at *20-21.

Defendants offer alternative explanations of paragraphs 6 and 7 which we think unpersuasive; but what is most important, these additional provisions address details of practical implementation that are consistent with Great Clips' version of what the settlement was all about: that it was not merely concerned

-10-

with letting the formalities of registration be completed but aimed to achieve a working solution to the rights of the parties as to the conduct of their businesses including the use of their respective marks.

Affirmed.