# United States Court of Appeals
## For the First Circuit

No. 09-2528

MARISOL RODRÍGUEZ-DÍAZ; JOSÉ RAFAEL FERRERAS-DURAN;
CONJUGAL PARTNERSHIP FERRERAS-RODRÍGUEZ,

Plaintiffs, Appellants,

v.

SEGUROS TRIPLE-S, INC.; JAVIER J. RODRÍGUEZ-BECERRA;
CONJUGAL PARTNERSHIP RODRÍGUEZ-DOE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté,  U.S. District Judge]

Before

Torruella, Boudin and Lipez,

Circuit Judges.

Jorge Miguel Suro Ballester for appellants.
Benjamín Morales-del Valle with whom Jaime E. Morales Morales
and Morales-Morales Law Offices were on brief for appellees.

February 23, 2011

**BOUDIN**, <u>**Circuit Judge**</u>.  This is an appeal by Marisol Rodríguez-Díaz and her husband José Rafael Ferreras-Durán from a decision granting summary judgment to Dr. Javier J. Rodríguez-Becerra ("Dr. Rodríguez") and his insurer Seguros Triple-S, Inc. in a medical malpractice action brought under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141 (1990).  We recount the facts in the light most favorable to the plaintiffs as the non-moving parties.  <u>Statchen</u> v. <u>Palmer</u>, 623 F.3d 15, 16 (1st Cir. 2010).

In early 2007, Rodríguez-Díaz, a forty-five-year-old woman then resident in Puerto Rico with a personal and family history of thyroid cancer, felt a lesion in her left parotid gland, which is one of the salivary glands.  Her treating physician, Dr. José Arsuaga, referred her to Hato Rey Pathology Associates ("HRPA") to undergo a fine needle aspiration biopsy of her left parotid gland.  Dr. Rodríguez, a physician at HRPA, performed the biopsy on March 1 and issued a cytology report on March 6.

Dr. Rodríguez's report provided a pathologic diagnosis of pleomorphic adenoma, which is a benign tumor of the salivary glands.  That diagnosis--and Dr. Rodríguez's failure to conduct a "differential diagnosis"--is the basis of this suit. Differential diagnosis is a standard technique for "the determination of which of two or more diseases with similar symptoms is the one from which the patient is suffering, by a systematic comparison and

-2-

contrasting of the clinical findings." Stedman's Medical Dictionary 492 (27th ed. 2000); see also Baker v. Dalkon Shield Claimants Trust, 156 F.3d 248, 252-53 (1st Cir. 1998).

Dr. Arsuaga told Rodríguez-Díaz of Dr. Rodríguez's diagnosis on March 30, 2007, and recommended surgical removal of the tumor--the standard treatment for pleomorphic adenoma--but said that there was no urgency. Rodríguez-Díaz later scheduled a consultation with Dr. Thomas Shellenberger, a head and neck surgical oncologist at the M.D. Anderson Cancer Center in Orlando, Florida, and requested her biopsy slides from HRPA to take to Dr. Shellenberger. Under HRPA policy, this request required a review of the slides by another HRPA physician.

Dr. Víctor J. Carlo-Chévere ("Dr. Carlo"), one of Dr. Rodríguez's colleagues at HRPA, reviewed Rodríguez-Díaz's slides and diagnosis. Dr. Carlo conducted a differential diagnosis, included mucoepidermoid carcinoma--a malignant tumor--as one of the possibilities, and therefore conducted a mucicarmine stain (which Dr. Rodríguez had not done) to check for mucin, indicating mucoepidermoid carcinoma. Dr. Carlo produced an amended cytology report that changed Rodríguez-Díaz's pathologic diagnosis from pleomorphic adenoma to low grade mucoepidermoid carcinoma.

On July 18, 2007, Rodríguez-Díaz picked up the slides and Dr. Carlo's amended cytology report with the revised diagnosis of a malignant tumor. She alleges that when she read Dr. Carlo's

report, realized Dr. Rodríguez's report was not correct, and learned she had cancer, she and her husband were shocked and their lives fell apart. Now mistrusting Puerto Rico physicians, they resorted at great expense to health care in the continental United States, which their health insurer refused to cover.

On August 29, 2007, Dr. Shellenberger successfully operated on Rodríguez-Díaz, surgically removing the malignant tumor. The attendant pathology confirmed the revised diagnosis of a malignant tumor. Within the year, on August 8, 2008, Rodríguez-Díaz and her husband brought this malpractice action in federal district court in Puerto Rico against Dr. Rodríguez and his medical insurer. Having become residents of Florida, they premised jurisdiction on diversity. Their claim was that Dr. Rodríguez had been negligent in failing to conduct a differential diagnosis.

During discovery, Dr. Rodríguez stated that he had not conducted a differential diagnosis because the evidence that he discerned in studying the biopsy slide and described in his report (specifically, myxoid stroma, epithelioid cells, and plasmacytoid cells) persuaded him that Rodríguez-Díaz suffered from a benign tumor, making unnecessary any differential diagnosis. The defendants thereafter moved for summary judgment. Their supporting evidence went considerably beyond Dr. Rodríguez's explanation.

The defense offered by expert witness report and deposition testimony that the treatment for pleomorphic adenoma--

which can become malignant--and low grade mucoepidermoid carcinoma are the same; that Rodríguez-Díaz had received the appropriate treatment in sufficient time; that an Orlando specialist had in July 2007 reviewed the same slides and made no diagnosis of malignancy; and that no definitive diagnosis could be made until surgery.

In opposition, Rodríguez-Díaz offered no expert testimony on the standard of care. She relied primarily on the failure of Dr. Rodríguez to conduct a differential diagnosis and thus to consider low grade mucoepidermoid carcinoma as an alternative to pleomorphic adenoma; on Dr. Carlo's use of the technique and the mucicarmine stain test in an attempt to exclude this alternative; and on Dr. Carlo's correct diagnosis and its confirmation after surgery. Rodríguez-Díaz made no claim of physical harm from the delay in surgery but did claim emotional distress and increased expenses due to her concern about medical care in Puerto Rico.

On September 22, 2009, the district court granted the defendants' motion for summary judgment, ruling that the plaintiffs could not establish a prima facie claim of medical malpractice under Article 1802 because they had not offered expert evidence establishing the relevant standard of care. The plaintiffs now appeal. Our review is de novo. Great Clips, Inc. v. Hair Cuttery of Greater Bos., L.L.C., 591 F.3d 32, 35 (1st Cir. 2010).

This being a diversity suit, the substantive law of Puerto Rico governs. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Under Puerto Rico law, the applicable rule of decision in a medical malpractice action is fault-based, Martínez-Serrano v. Quality Health Servs. of P.R., Inc., 568 F.3d 278, 285 (1st Cir. 2009); Article 1802 provides in pertinent part that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141.

To show medical malpractice, a plaintiff must establish that the care afforded did not meet "the professional requirements generally acknowledged by the medical profession." Santiago Otero v. Méndez, 1994 P.R.-Eng. 909,224, 135 P.R. Dec. 540 (1994); see also Pagés-Ramírez v. Ramírez-González, 605 F.3d 109, 113 (1st Cir. 2010) (listing the elements). This, in turn, "[a]lmost invariably" requires the plaintiff to introduce expert testimony. Cruz-Vázquez v. Mennonite Gen. Hosp., Inc., 613 F.3d 54, 56 (1st Cir. 2010). Under Puerto Rico law, to make out a prima facie case of physician negligence:

> Plaintiff must establish, through expert evidence, the degree of care and scientific knowledge required by the profession in the treatment of a specific type of patient.

Rodríguez Crespo v. Hernández, 21 P.R. Offic. Trans. 637, 647

(1988).[1]

Despite such broad statements, the jury's own common sense could occasionally close the gap and establish that the care afforded did not meet minimal standards. See Rolon-Alvarado v. Municipality of San Juan, 1 F.3d 74, 79 (1st Cir. 1993) (offering examples of possible exceptions); W. Keeton et al., Prosser and Keeton on the Law of Torts § 32, at 189 (5th ed. 1984) (same). And the expert evidence, if required, might come not from the plaintiff's expert but rather from, say, the defense expert or admissions by the defendant doctor. See Chizmadia v. Smiley's Point Clinic, 873 F.2d 1163, 1165 (8th Cir. 1989). The present case, however, fits neither of these possible exceptions.

Differential diagnosis is a standard tool, but as to what symptoms and in what conditions a differential diagnosis is required for proper medical care, no lay jury would be likely to know on its own. Rolon-Alvarado, 1 F.3d at 79. The fact that Dr. Carlo conducted a differential diagnosis in this case, and that its application led to the correct diagnosis, does not show that failing to use it was negligent. There is no indication that Dr. Carlo or another physician testifying as an expert was prepared to say otherwise.

---

[1] See also Pagés-Ramírez, 605 F.3d at 113; Martínez-Serrano, 568 F.3d at 285; Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P.R., 394 F.3d 40, 43 (1st Cir. 2005); Cortés-Irizarry v. Corporación Insular de Seguros, 111 F.3d 184, 190 (1st Cir. 1997); Lama v. Borras, 16 F.3d 473, 478 (1st Cir. 1994).

In the present case, counsel for Rodríguez-Díaz was asked at oral argument why no expert was presented for the plaintiffs; he answered, quite plausibly, that he made every effort to find one but was unsuccessful. This hardly disproves the plaintiffs' claim: doctors, especially in tightknit communities, may be hesitant to accuse each other; pathology is a specialized field which could further narrow the supply of experts; and although experts can usually be found somewhere at some price, the lack of physical injury here likely limited what the plaintiffs could promise to pay.

Plaintiffs' counsel made an admirable effort to do his own medical research. He cited both in the district court and on this appeal a 2002 study in a medical periodical for the proposition that low grade carcinoma is one of the differential diagnoses of pleomorphic adenoma.[2] Yet he has not argued directly that this article, standing by itself, would allow the jury to conclude that every pleomorphic adenoma requires for proper medical treatment a differential diagnosis or the mucicarmine stain test.

We think that the implicit concession is warranted. The article is highly technical--even to understand much of the

---

[2]Stanley, <u>Selected Problems in Fine Needle Aspiration of Head and Neck Masses</u>, 15 Modern Pathology 342 (2002). He also cited literature to support the view that, where mucin is present, a definitive judgment should be deferred pending further testing, <u>see</u> Jacobs, <u>Low Grade Mucoepidermoid Carcinoma ex Pleomorphic Adenoma</u>, 38 Acta Cytologica 93 (1994), but such literature is of no help in establishing when proper care requires the test to identify mucin.

terminology would require a medical dictionary and probably some science--and nowhere does it contain a flat statement that in every case where pleomorphic adenoma is diagnosed a differential diagnosis or the mucicarmine stain test is required. To say that a set of symptoms can encompass several different conditions says nothing about the precise mix in the case at hand, let alone what other factors might suggest about the need for differentiation.

One can easily conjecture reasons why differentiating might matter; the most obvious is the relative urgency of the surgery. The surgery itself would also differ, but it appears from testimony that this would likely be determined definitively during the preliminary steps of the surgery itself rather than by the stain test. Absent an expert witness, however, it would be hard for the jury to know anything about relative urgency or any need for differentiation on some other basis--let alone how the patient's specific symptoms or the slide results in this case might bear upon the question.

We have, as required in a summary judgment case, drawn reasonable inferences in the favor of the plaintiffs as the parties resisting the judgment, Faiola v. APCO Graphics, Inc., 629 F.3d 43, 45 (1st Cir. 2010), but the outcome does not turn on evaluating the evidence under a reasonable jury standard. Rather, the appeal fails because there is a legal rule requiring expert testimony in a case

of this character, and possible exceptions to the rule have not been shown to apply.

The judgment of the district court is <u>affirmed</u>.  Each side is to bear its own costs on the appeal.

<u>It is so ordered</u>.