# United States Court of Appeals
## For the First Circuit

No. 23-1391

TYNGSBORO SPORTS II SOLAR, LLC and 201 OAK PEMBROKE SOLAR LLC,
individually and on behalf of all others similarly situated,

Plaintiffs, Appellants,

v.

NATIONAL GRID USA SERVICE COMPANY, INC. and MASSACHUSETTS
ELECTRIC COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Rikelman, Selya, and Howard,
Circuit Judges.

Andrew M. McNeela, with whom John R. Low-Beer, David E.
Kovel, Kirby McInerney LLP, Seth H. Handy, and Handy Law LLC were
on brief, for appellants.
Richard H. Brown, with whom Michael J. Fitzpatrick and
Day Pitney LLP were on brief, for appellees.

December 6, 2023

**HOWARD, <u>Circuit Judge</u>.** For the past nine years, various renewable-energy generators have unsuccessfully petitioned state authorities to prohibit utility companies from charging them certain tax-related fees. Seeking better fortune in federal court, two such generators brought this putative class action, but the district court dismissed the case after finding that it lacked subject-matter jurisdiction. The generators now appeal, arguing that the court had jurisdiction based on the suit's connection to federal tax law. Yet their complaint does not bring any claim that arises under federal law. Accordingly, we affirm.

## I. BACKGROUND

### A. The Parties

The fees at issue are features of service agreements between Tyngsboro Sports II Solar, LLC and 201 Oak Pembroke Solar LLC (collectively, the "Solar Companies" or "Companies") and National Grid USA Service Company and Massachusetts Electric Company (collectively, "National Grid").[1] National Grid operates an "electric distribution network" -- a system that delivers electricity from a "transmission network" to customers.[2] The Solar Companies operate solar-generation projects in Massachusetts.

_____

[1] The appellees are both subsidiaries of the same utility conglomerate. Any distinction between the two is irrelevant to this appeal.

[2] For the purposes of this dispute, a transmission network is critically different from a distribution network. Transmission networks operate at a very high voltage and move electricity from

- 2 -

To deliver solar-generated electricity to their Massachusetts-based customers, the Solar Companies need to connect to National Grid's distribution network, and to make this connection, National Grid must modify its hardware. National Grid charges the Companies for the right to use the distribution network and for the costs of the modifications. These arrangements are governed in part by standardized interconnection service agreements (ISAs) between National Grid and each Company. The ISAs are at the heart of a long-running dispute between the Solar Companies and National Grid, specifically, their requirement that the Solar Companies pay a "tax gross up" that compensates National Grid for any tax liability incurred by the transaction.

## B. The Dispute

National Grid contends that the Solar Companies' interconnection payments are taxable income to it and therefore the Companies must pay National Grid a tax gross up to offset the liability. The Solar Companies disagree. While they acknowledge that payments by "customers" to utilities are taxable under federal law, the Companies insist that they are not "customers" because National Grid intends to resell the electricity. 26 U.S.C. § 118.

---

generator plants to distribution networks. Distribution networks operate at a much lower voltage and transfer electricity to customers.

- 3 -

After other renewable-energy generators raised similar concerns, National Grid requested that the Internal Revenue Service (IRS) weigh in on the matter. The IRS then issued a public notice clarifying the scope of the relevant tax safe harbor. I.R.S. Notice 2016-36, 2016-25 I.R.B. 1029 (June 10, 2016). This notice, however, did little to abate the parties' dispute. The IRS accepted that renewable-energy generators are not always considered "customers." Id. at 1029. But in its "Purpose" section, the notice stated that this safe harbor applied only to fees related to interconnections to transmission systems. Id. Further, when setting forth the specific requirements for the safe harbor, the notice referenced only transmission systems, not distribution systems. Id. at 1029-31. Yet, it also stated that "a generator (such as a solar or wind farm) may contribute an intertie to a utility that qualifies under the new safe harbor even if the generator is interconnected with a distribution system, rather than a transmission system, if all of the [specific] requirements . . . are met." Id. at 1031. Muddying the waters even further, the notice defined "intertie" as an interconnection to a transmission network without referencing distribution networks. Id.

A predictable disagreement followed: the Solar Companies viewed the notice as clearly establishing that the fees are not taxable, and National Grid thought the notice was unclear. Seeking

- 4 -

guidance, National Grid solicited an opinion from an independent auditor, Ernst & Young LLP (E&Y). E&Y thought the notice created a safe harbor for payments made by energy companies only when a company purchases an interconnection to a transmission system, not a distribution system.[3] E&Y thus concluded that the Solar Companies' interconnection payments were taxable to National Grid. National Grid charged the Companies for the expected tax liability, and the Companies ultimately paid.

Over the past decade, the Companies and similarly situated parties have asked state agencies to block National Grid from assessing this charge. Before the IRS issued its guidance, a renewable-energy generator challenged National Grid's tax gross up in a petition to the Rhode Island Public Utilities Commission (RIPUC). In Re: Petition of Wind Energy Dev., LLC, No. 4483, 2017 WL 6295387 (RIPUC Nov. 27, 2017). The RIPUC found that National Grid's position was reasonable and dismissed the petition. The Rhode Island Supreme Court affirmed but acknowledged that the 2016 IRS notice had not definitively resolved the federal tax question and expressed its "fervent hope that the IRS will provide clear

---

[3] The Companies allege that, before the 2016 notice, National Grid sent a letter to the IRS indicating that it did not believe the tax provision to make this distinction. Further still, the Companies claim that after reviewing the notice, National Grid admitted in an email to the IRS that it thought that interconnection payments to distribution networks were still not taxable.

and concise guidance to these parties in the near future." ACP Land, LLC v. R.I. Pub. Utils. Comm'n, 228 A.3d 328, 338 (R.I. 2020).

The Massachusetts Department of Public Utilities (MDPU), the entity that approves National Grid's ISAs in that state, heard a similar challenge against a different utility -- Eversource. Petition of NStar Elec. Co., No. 17-05-B, 2018 WL 369344 (Mass. D.P.U. Jan. 5, 2018). Despite having jurisdiction over the matter, the MDPU declined to decide whether a similar tax gross up was justified. Id. at *133. Instead, it recommended that the issue be decided in a separate MDPU proceeding "with the intent to set a uniform practice for all electric distribution companies." Id.

Unsatisfied with the results at the state level, the Solar Companies and other renewable-energy generators filed a federal putative class action lawsuit in the District of Rhode Island. After the court dismissed them from the suit, the Solar Companies filed this suit in Massachusetts.[4] The complaint brought four claims against National Grid: a request for declaratory relief under the Declaratory Judgment Act (DJA) (Count I); a state-law claim for a breach of the covenant of good faith and fair dealing

---

[4] Other energy companies that were also dismissed from the Rhode Island action filed a similar complaint in the Northern District of New York. That court ruled for the utility on subject-matter-jurisdiction grounds. Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co., No. 22-1085, 2023 WL 5175933, at *9 (N.D.N.Y. Aug. 11, 2023).

(Count II); a state-law claim for restitution and unjust enrichment (Count III); and a state-law claim for violating a statutory requirement that public utilities assess only just and reasonable charges (Count IV).

The district court dismissed the complaint due to a lack of subject-matter jurisdiction. Tyngsboro Sports II Solar, LLC v. Nat'l Grid USA Serv. Co., Inc., No. 22-11791, 2023 WL 2992524, at *2 (D. Mass. Apr. 18, 2023). It first found that the Solar Companies' request for declaratory judgment was barred by the DJA. Tyngsboro Sports II Solar, LLC, 2023 WL 299524, at *1. But even if the DJA claim were not barred, the court explained, the Companies would lack standing to pursue the claim because, absent participation in the litigation by the IRS, the court lacked capacity to grant effective relief for their injuries. It then noted that, to the extent that the plaintiffs sought to limit their declaratory-relief request to the rights of the parties, it still declined to exercise jurisdiction over the claim because an adverse judgment could subject National Grid to inconsistent obligations. Id. at *2. Finally, the court concluded that it lacked jurisdiction over the three remaining state-law claims, because none of them contained an embedded federal question. Id. In reaching this conclusion, it held that Counts II and IV do not necessarily raise the tax issue, and to the extent that Count III does raise the tax issue, the issue is insubstantial. Id.

- 7 -

## II. DISCUSSION

The Solar Companies appeal from the district court's judgment on all four counts. We address the request for a declaratory judgment first and then turn to the state-law claims.

We review a dismissal for lack of subject-matter jurisdiction de novo. Efreom v. McKee, 46 F.4th 9, 16 (1st Cir. 2022) (citing Davison v. Gov't of P.R.-P.R. Firefighters Corps, 471 F.3d 220, 222 (1st Cir. 2006)). In doing so, we take the plaintiffs' well-pleaded facts as true and afford them the benefit of all reasonable inferences. Id.

### A. Declaratory Judgment

The Companies contend that the district court has federal-question jurisdiction over their declaratory judgment request. A court has federal-question jurisdiction over cases that "aris[e] under" federal law. 28 U.S.C. § 1331. This power is limited, however, by the so-called "well-pleaded complaint" rule, which requires that a federal matter appear "on the face" of a plaintiff's complaint. R.I. Fishermen's All., Inc. v. R.I. Dep't of Envt'l Mgmt., 585 F.3d 42, 48 (1st Cir. 2009) (citing Franchise Tax Bd. Of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 13 (1983)).[5] The "well-pleaded complaint" refers only to

---

[5] The district court did not address the well-pleaded-complaint doctrine, instead holding that the DJA bars the claim. Because we are cognizant that "subject-matter delineations must be policed by the courts," we affirm the dismissal of the declaratory-

a plaintiff's affirmative claims and not any extraneous material such as anticipated defenses.  Id.  As a result, a litigant cannot establish federal-question jurisdiction by merely asserting a state-law claim to which there is a federal defense.

This seemingly simple principle becomes somewhat more complicated when applied to declaratory judgments.  The DJA does not by itself create a federal cause of action.  Colonial Penn Grp., Inc. v. Colonial Deposit Co., 834 F.2d 229, 232 (1st Cir. 1987) ("Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." (quoting Skelly Oil v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950))).  A federal court consequently cannot exercise federal-question jurisdiction over a request for declaratory relief "if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action."  Franchise Tax Bd., 463 U.S. at 16.  Otherwise, a party could circumvent the well-pleaded complaint rule through "artful pleading" by reshaping an anticipated federal defense into a request for declaratory relief.  Skelly Oil, 339 U.S. at 673-74.

judgment claim on the alternative basis argued by the parties. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999); see also United States v. Millennium Lab'ys., Inc., 923 F.3d 240, 248 (1st Cir. 2019) ("A federal appellate court normally must 'satisfy itself both of its own subject-matter jurisdiction and of the subject-matter jurisdiction of the trial court before proceeding further.'" (quoting Royal Siam Corp. v. Chertoff, 484 F.3d 139, 143 (1st Cir. 2007))).

To avoid such a scenario, when assessing whether federal-question jurisdiction exists over a request for declaratory relief under the DJA, we reverse the positions of the parties and look at a hypothetical coercive action initiated by the defendant against the plaintiff. Great Clips, Inc. v. Hair Cuttery of Greater Bos., 591 F.3d 32, 35 (1st Cir. 2010). If -- and only if -- a federal claim appears on the face of that hypothetical complaint, we have subject-matter jurisdiction. See id.

The Solar Companies do not meet this threshold requirement. In an inverted coercive action, National Grid would sue the Solar Companies for breaching the ISAs by failing to pay the tax gross up. There, National Grid's well-pleaded complaint would not raise a federal question; it would merely contain a state-law breach-of-contract claim. The tax issue would then arise only as a defense asserted by the Solar Companies. Without the "availability of the declaratory judgment procedure," the federal tax issue could only arise as a defense to a state-law claim. Franchise Tax Bd., 463 U.S. at 16 (quoting Charles R. Wright, Arthur K. Miller, & Mary K. Kane, Federal Practice and Procedure § 2767, at 744-45 (2d ed. 1983)).

In their reply brief, the Solar Companies insist that this conceptual realignment of the parties is inappropriate in assessing the nature of their claim. A conceptual realignment would make it so National Grid would be suing them for failing to

- 10 -

pay the tax gross up. Yet, as they emphasize, they have already paid National Grid. In turn, they contend, this conceptual realignment is untenable. Therefore, they conclude, it should not be deployed to dismiss their pleading as merely an "artful defensive maneuver." This argument falls flat. It is "irrefragable that the burden of establishing jurisdiction must fall to the party who asserts it." Woo v. Spackman, 988 F.3d 47, 53 (1st Cir. 2021). The Solar Companies do not carry this burden because they fail to explain how, but for the DJA, the federal tax issue could arise as anything but a defense to a nonfederal claim. They do emphasize that it can arise in service of their restitution claim in Count III, but that logic only holds if Count III independently gives rise to federal jurisdiction, and as we explain below in Section II.B, it does not. Thus, the district court correctly determined that it lacked subject-matter jurisdiction over the request for declaratory relief.[6]

---

[6] The Companies also argue that the district court abused its discretion by failing to issue a declaration that merely "resolv[ed] the liabilities of the parties," thereby "avoid[ing] the standing issue." However, this presupposes that the court would have had jurisdiction over such a claim. See Covidien LP v. Esch, 993 F.3d 45, 52 (1st Cir. 2021). Because such a declaration would encounter the same well-pleaded complaint issue, we need not determine whether the district court exceeded its discretion in refusing to rule on it.

## B. State Law Claims

The Solar Companies acknowledge that their remaining claims -- Counts II-IV -- derive from state law. They maintain, however, that the district court nevertheless had subject-matter jurisdiction because these state-law claims contain embedded federal issues. The Supreme Court has recognized that federal-question jurisdiction exists over a state-law claim when (1) the state-law claim necessarily raises a federal issue, (2) the federal issue is substantial, (3) the parties actually dispute the federal issue, and (4) the court's exercise of jurisdiction would not upset "any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005). Here, the parties clearly dispute the federal issue; National Grid claims the payments are taxable, and the Solar Companies disagree. But the Solar Companies nonetheless fail to clear the Grable bar. As we explain below, Counts II and IV do not necessarily raise a federal issue, while in Count III, the federal issue is not substantial.

**Necessity.** The first prong of the Grable test requires that a state-law claim "necessarily raise" the federal issue. Rhode Island v. Shell Oil Prods. Co., 35 F.4th 44, 56 (1st Cir. 2022). We have explained that a state action necessarily raises a federal issue when "it is not logically possible for the plaintiff[] to prevail . . . without affirmatively answering the [federal]

- 12 -

question." R.I. Fishermen's All., 585 F.3d at 49. The plaintiff must do more than bring claims that are merely "bound up" with federal interests; federal law must be an "essential element" of the state-law claims. Rhode Island, at 56-57.

Under this standard, Counts II and IV do not necessarily raise federal issues because the Companies can prevail on either without answering the tax question.

Count II alleges that National Grid violated the implied covenant of good faith and fair dealing when it charged the tax gross up, ignored the IRS guidance, and solicited the E&Y opinion contrary to industry custom. By the complaint's own allegations, the Companies can prevail on this count without demonstrating that the payments were in fact taxable. The complaint states:

> Defendants further violated the implied covenant of good faith by: (i) ignoring clear IRS guidance and the opinion of their own Director of U.S. Tax Research and Planning; and (ii) soliciting an opinion that was contrary to industry custom and practice and would support the result they sought in order to further their interest in increasing Plaintiffs' interconnection costs.

Neither of these allegations require proof that the payments were not taxable; rather, they only require proof that National Grid ignored the IRS guidance, ignored the opinion of their own officer, and solicited the E&Y opinion in bad faith. And under Massachusetts law, any of those grounds could independently establish bad faith and unfair dealing. See Guldseth v. Fam. Med.

- 13 -

Assocs. LLC, 45 F.4th 526, 537 (1st Cir. 2022) ("To show a breach of the implied covenant, one party has to show that the other violated her 'reasonable expectations . . . concerning the obligations of the contract.'" (quoting 477 Harrison Ave., LLC v. JACE Bos., LLC, 134 N.E.3d 91, 101 (Mass. 2019))).

Count IV suffers from a similar infirmity. It alleges that National Grid violated a Massachusetts statute requiring public utilities to assess only "just and reasonable" charges. Mass. Gen. Laws ch. 164, § 94. And the Solar Companies can certainly "logically . . . prevail" on this claim without a ruling on the tax issue. R.I. Fishermen's All., 585 F.3d at 49. As did the Rhode Island Supreme Court when reviewing the RIPUC's determination, a court could merely assess whether National Grid's reading of the statute and I.R.S. Notice 2016-36 was reasonable. ACP Land, 288 A.3d at 338. Counts II and IV therefore both fail the necessity prong.[7]

---

[7] Jacobson, the Second Circuit case on which the Solar Companies rely to establish necessity, supports our conclusion. There, the plaintiff alleged that a bank had violated the New York False Claims Act by filing tax returns with the IRS that fraudulently stated that the bank qualified for a certain federal tax status, thereby improperly avoiding New York state taxes. N.Y. ex rel Jacobson v. Wells Fargo Nat'l Bank, N.A., 824 F.3d 308, 310 (2d Cir. 2016). Because the plaintiff had to show that the banks didn't qualify for the tax status to prove that the Bank made a false statement, the state law claims necessarily raised the federal tax-status issue. Id. at 317. The Solar Companies' good-faith and unreasonable-charges claims, by contrast, can be established without a ruling on the federal tax question.

Conversely, Count III does necessarily raise the federal tax issue. It does not allege that National Grid acted unreasonably or in bad faith but rather that it mistakenly paid the tax. Under Massachusetts law, a party that is mistakenly overcharged by its contractual counterparty may "recover the value of the benefit conferred in excess of the recipient's contractual entitlement." Metro. Life Ins. Co. v. Cotter, 984 N.E.2d 835, 849 (Mass. 2013) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 35(1) (Am. L. Inst. 2011)). To prove that they overpaid National Grid, the Solar Companies must necessarily prove that the tax was not actually owed to the IRS. This of course is the federal issue.

In response, National Grid argues that Count III does not require resolving the federal issue because it incorporates an allegation from Count II that National Grid "further violated" the implied covenant of good faith and fair dealing by ignoring clear IRS guidance and soliciting an opinion from E&Y that contravened industry practice. But those incorporated allegations could not, by themselves, serve as bases for finding for the Solar Companies on Count III. The court would have to find that the payment was not "in excess of the recipient's contractual entitlement," regardless of whether National Grid acted in bad faith. Restatement (Third) of Restitution and Unjust Enrichment § 35 (Am.

- 15 -

Law Inst. 2011). Thus, we must then turn to the substantiality prong of the Grable analysis.

**Substantiality.** In addition to its necessity prong, Grable also requires that the embedded federal issue be substantial to "the federal system as a whole." Gunn v. Minton, 568 U.S. 251, 260 (2013). The substantiality inquiry turns on whether the resolution of the suit would measurably affect the federal government. AMTAX Holdings 227, LLC v. Tenants' Dev. II Corp., 15 F.4th 551, 558 (1st Cir. 2021) ("The common thread that runs through all such suits is that they entail some appreciable measure of risk to the federal sovereign."). Such impact usually occurs when the suit challenges the action of a federal actor or would "otherwise yield 'a new interpretation of [federal law] which will govern a large number of cases.'" Id. (alteration in original) (quoting Mun. of Mayaguez v. Corporación Para el Desarollo del Oeste, Inc., 726 F.3d 8, 14 (1st Cir. 2013)). Compare One and Ken Valley Hous. Grp. v. Me. State Hous. Auth., 716 F.3d 218, 225 (1st Cir. 2013) (finding an issue substantial where its resolution could require HUD to "scale back the scope of the Section 8 program"), with Mayaguez, 726 F.3d at 15 ("[N]or was there any risk that the outcome of the dispute would impact HUD's ability to demand repayment of federal funds in any future case."). While the court must consider "the totality of the circumstances" when assessing whether a claim is substantial, one factor that weighs in favor of

- 16 -

finding substantiality is when a case "present[s] 'a nearly pure issue of law that could be settled once and for all and thereafter would govern numerous cases.'" One and Ken Valley, 716 F.3d at 224-25 (quoting Bender v. Jordan, 623 F.3d 1128, 1130 (D.C. Cir. 2010)). By contrast, when a case is "fact-bound and situation-specific" it is often not substantial under the Grable test. Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 700-01 (2006).

When read together, Grable and Gunn illuminate the bounds of the substantiality inquiry. The state claim in Grable -- found to raise a substantial federal issue -- required the Court to interpret the statute providing the IRS's notice protocols when seizing property. 545 U.S. at 315. While the case would not bind the IRS, which was not a party to the action, the agency had a "strong interest" in being able to seize property to recover delinquent taxes, and a judgment in favor of the plaintiffs would likely force it to alter its notice procedures. Id. The state claim in Gunn, by contrast, raised only a situation-specific federal issue that was held not to be substantial: whether a plaintiff would have prevailed on a patent claim. 568 U.S. at 259. A decision would not affect any federal agency or actor, and in fact, it would not even affect the status of the federal patent. Id. at 261.

With these limits in mind, we conclude that the federal tax issue that is necessarily raised in Count III is not substantial. Even after taking the Solar Companies' well-pleaded facts as true and affording the Companies the benefit of all reasonable inferences, the complaint fails to show that a judgment would pose a risk to some federal actor or program. The Companies do allege that "hundreds" of independent energy companies have entered similar ISAs with National Grid and another utility, Eversource. While it is then reasonable to infer that a judgment for the Companies would affect how those utilities and the related state agencies draft, approve, and enforce ISAs, there is no indication that the IRS would be affected. The Solar Companies do not allege that the IRS itself was assessing these taxes, do not estimate the aggregate value of the tax gross up adders collected by the utilities, and do not even claim that the utilities were paying the tax to the IRS.

The Companies also fail to establish that their suit requires the district court to issue "a new interpretation of [federal law] . . . which will govern a large number of cases." Mayaguez, 726 F.3d at 14. To be sure, a decision by the district court would answer a mixed question of federal law and fact -- whether the tax code covers fees paid to connect to distribution networks -- which would govern the Companies' action and the few virtually identical actions brought by other energy generators.

But this is not a pure question of law, and we fail to see how its resolution would affect a sufficiently large class of cases. The question relates only to the select group of energy generators that have identical contracts with a utility and that connect to the utility's distribution, not transmission, systems. And outside of these situations, the Solar Companies do not point to any cases that would be governed by a judgment in their suit. In fact, they concede that actual taxpayers -- the utilities -- have no incentive to challenge the relevant provision. Based on the complaint, then, the tax issue would not govern a "large number" of cases, as required by our precedent, and is instead specific to the relatively unique situation presented in this case and the parallel litigations. Id. Hence Count III does not raise a substantial federal issue.

### III. CONCLUSION

This class action unquestionably relates to federal taxes. But federal-question jurisdiction demands that a litigant show more than a mere relation between its case and a federal statute or actor; the action must arise under federal law. Unfortunately for the Solar Companies, they have not shown that their claims are so intertwined with the laws of the United States, and thus the district court lacked subject-matter jurisdiction over the matter.

**Affirmed**.